35 F.3d 82
 63 USLW 2197, Fed. Sec. L. Rep. P 98,391
 McMAHAN SECURITIES CO. L.P.; D. Bruce McMahan; John R.
Gordon; Saul Schwartzman; McMahan & Company,
Plaintiffs-Appellees,
v.
FORUM CAPITAL MARKETS L.P.; Founders Financial Group L.P.;
Forest Investment Management L.P.; Michael A. Boyd, Jr.;
Michael A. Boyd, Inc.; Michael A. Boyd Pension; Terence M.
York; John F. Lepore; Philip R. Platek; Michael F.
McNulty; Walter K. McNulty; Steven B. Jones; Thomas Shea,
Jr.; Edward Okine; Elizabeth Uhl; Arthur S. Raskin;
Martha L. Raskin; Robert Blumenthal; Joyce Blumenthal;
Alan D. Bunims; Roderick S. Boyd; Judith E. Doris,
Defendants-Appellants.
 No. 1595, Docket 94-7087.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1994.
Decided Sept. 9, 1994.
 
 Benjamin H. Green, Stamford, CT (Taggart D. Adams, Paul F. McCurdy, Kelley Drye & Warren, of counsel), for defendants-appellants.
 Deborah E. Lans, New York City (Fred H. Perkins, David A. Piedra, Morrison Cohen Singer & Weinstein, New York City, Christopher Rooney, Kevin C. Doyle, Carmody & Torrance, New Haven, CT, of counsel), for plaintiffs-appellees.
 Before: WALKER and JACOBS, Circuit Judges, and CARMAN, Judge.*
 WALKER, Circuit Judge:
 
 
 1
 This appeal addresses the extent to which parties involved in the securities industry must arbitrate certain disputes surrounding the departure of numerous members of an existing securities firm to start up their own securities firm. Plaintiffs filed a multicount complaint in federal district court alleging that defendants violated various federal and state laws by misappropriating certain of plaintiffs' assets when they left plaintiffs' firm to create their own. Defendants in turn sought to compel arbitration of the disputes pursuant to industry arbitration regulations. The United States District Court for the District of Connecticut (T.F. Gilroy Daly, Judge ), approving and adopting a recommendation of the magistrate judge (Thomas P. Smith, Magistrate Judge ), denied defendants' motion to stay the proceedings and compel arbitration, and defendants appealed this order pursuant to 9 U.S.C. Sec. 16. For the reasons that follow, we reverse that order and remand to the district court with instructions to stay the proceedings and direct the parties to proceed to arbitration.
 
 BACKGROUND
 
 2
 Plaintiff-appellee McMahan Securities Co. L.P. ("McMahan Securities") is a registered broker-dealer and investment advisor engaged in the trading of convertible securities and a member of the National Association of Securities Dealers, Inc. ("NASD"). Plaintiff-appellee D. Bruce McMahan ("McMahan") is the controlling general partner and chief executive officer of McMahan Securities. In the summer of 1991, McMahan became embroiled in a controversy regarding the control and management structure of the firm with then-general partner defendant-appellant Michael A. Boyd, Jr. ("Boyd"). After unsuccessful efforts to conciliate these differences in early 1992, Boyd announced plans to leave McMahan Securities and start his own brokerage firm also specializing in convertible securities. Numerous McMahan Securities employees and limited or general partners subsequently expressed an interest in joining Boyd in his new venture. Faced with these departures, McMahan relented. He agreed to participate with the departing individuals in forming a new firm with a different management structure and promised to contribute capital to this enterprise. As a consequence, those who were planning to leave McMahan Securities remained on the job pending the registration and regulatory approval of the new entity, Forum Capital Markets L.P. ("Forum").
 
 
 3
 While awaiting Forum's regulatory approval, McMahan persuaded the potential defectors to contribute an additional $8 million in capital to McMahan Securities with the assurance that this capital would subsequently be transferred to Forum once regulatory approval was obtained. Shortly thereafter in July of 1992, however, McMahan requested the resignation of defendant-appellant Terence M. York ("York"), who had also been pivotal in creating Forum and was slated to become its chief operating officer. Boyd, York, and the other individuals scheduled to depart now became convinced that McMahan had no intention of joining in their new venture and had only promised to do so to prolong their services with McMahan Securities. They demanded return of the $8 million recently solicited by McMahan and solidified their plans to leave McMahan Securities. McMahan returned the bulk of these funds, but withheld approximately $610,000.
 
 
 4
 In January of 1993, the departing individuals began operation of Forum as a NASD member, and in May of 1993 they commenced an arbitration pursuant to NASD rules to recover the $610,000 plus related damages stemming from McMahan's allegedly tortious conduct. This arbitration is ongoing and not the subject of this appeal.
 
 
 5
 In July of 1993, McMahan filed the federal complaint underlying this appeal. Named as plaintiffs were McMahan, McMahan Securities, McMahan & Company ("McMahan & Co."), a limited partner of McMahan Securities, and two other limited partners of McMahan Securities, John R. Gordon and Saul Schwartzman. Named as defendants were Boyd, York, and fifteen other individuals who were former limited or general partners or employees of McMahan Securities. Also named as defendants were Forum, Founders Financial Group L.P. ("Founders"), Forest Investment Management L.P. ("Forest"), Michael A. Boyd, Inc. ("Boyd Inc."), and Michael A. Boyd Pension ("Boyd Pension"). Founders is a general partner of Forum. Forest is a registered investment advisor affiliated with both Forum and Founders. Boyd Inc. and Boyd Pension were formerly limited partners of McMahan Securities; presently, Boyd Inc. is a general partner and Boyd Pension a limited partner of Founders.
 
 
 6
 Plaintiffs' complaint contains fifteen causes of action alleging federal statutory violations as well as state statutory and common law violations. According to the complaint, Boyd, York and the other defendants misappropriated a computer program belonging to and designed by McMahan Securities for use in its complex securities trading business. Further, the complaint alleges that defendants stole numerous other trade secrets of McMahan Securities, including client lists, research reports, reports of past investment performance of certain securities, and internal organizational material. In addition, the complaint charges a violation of Connecticut's state common law of unfair competition, a breach of fiduciary duty, a breach of contract, and violations of Connecticut's Unfair Trade Practices Act, Conn.Gen.Stat. Sec. 42-110(a), Uniform Trade Secrets Act, id. Secs. 35-52 to 35-54, and Uniform Securities Act, id. Sec. 36-498. Plaintiffs further allege that defendants' actions violated federal copyright laws and that their failure to disclose their intentions to misappropriate McMahan Securities' assets violated Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and SEC Rule 10b-5, 17 C.F.R. Sec. 240.10b-5.
 
 
 7
 Shortly after the complaint was filed in the district court, defendants moved to stay the proceedings and compel arbitration. The district court referred the matter to the magistrate judge, who recommended that defendants' motion be denied. The magistrate judge's recommended ruling, in its entirety, stated:
 
 
 8
 August 30, 1993. Defendants have not demonstrated that arbitration of Plaintiffs' claims is required. The motion to stay is therefore DENIED.
 
 
 9
 Defendants promptly objected to the recommended ruling, which the district court nevertheless adopted and approved in a brief endorsement:
 
 
 10
 January 4, 1994. Civ. No. 3:93CV01364 (TFGD). After careful review of the record, and over objection, Magistrate Judge Smith's Recommended Ruling is hereby AFFIRMED, APPROVED and ADOPTED. The Court does not reach the issue whether the instant decision requires "clearly erroneous" or "de novo" review, as Magistrate Judge Smith's Recommended Ruling warrants adoption under either standard.
 
 
 11
 This appeal followed.
 
 DISCUSSION
 I. Standard of Review
 
 12
 Under the Federal Arbitration Act ("FAA"), a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. See 9 U.S.C. Sec. 3. The FAA leaves no discretion with the district court in the matter. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). As a consequence, we review a district court's determination as to the arbitrability of a dispute de novo. See, e.g., Haviland v. Goldman, Sachs & Co., 947 F.2d 601, 604 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992); Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991). Furthermore, we are mindful of the Supreme Court's admonition that while "the FAA does not require parties to arbitrate when they have not agreed to do so," Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989), we must construe "any doubts concerning the scope of arbitrable issues ... in favor of arbitration," Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).
 
 II. The Basis for Arbitration
 
 13
 While plaintiffs and defendants agree that their obligation to arbitrate, whatever it may be, is governed by the NASD Code of Arbitration Procedure ("NASD Code" or "NASD Code of Arbitration"), they disagree as to the NASD Code's scope. Plaintiffs characterize the action they filed as an employment dispute and argue that the NASD Code does not encompass such claims. They further argue that the copyright claims brought in their complaint are inherently nonarbitrable and that certain parties in the dispute are not subject to NASD arbitration. Conversely, defendants maintain that all of the plaintiffs' claims are arbitrable under the NASD Code, and that all of the parties involved are properly subject to the NASD arbitration.
 
 
 14
 The language of the NASD Code of Arbitration provides:
 
 PART I. ADMINISTRATIVE PROVISIONS
 Matters Eligible for Submission
 
 15
 Sec. 1. This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 
 
 16
 (1) between or among members;
 
 
 17
 (2) between or among members and public customers, or others....
 
 
 18
 * * * * * *
 
 PART II. INDUSTRY AND CLEARING CONTROVERSIES
 Required Submission
 
 19
 Sec. 8. (a) Any dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code....
 
 
 20
 NASD Code Secs. 1, 8.
 
 
 21
 Under the NASD Code, two conditions must be met in order for a securities industry dispute to be arbitrable. The first is a restriction on the parties: the dispute must be "between or among members and/or associated persons, and/or certain others." The second is a restriction on the subject matter: the substantive disputes must be ones "arising in connection with the business" of members or arising "in connection with the activities of such associated person(s)." We consider each requirement in turn.
 
 
 22
 A. Are the Parties Subject to Arbitration?
 
 
 23
 The NASD By-Laws define a "member" as "any broker or dealer admitted to membership" in the NASD. See National Association of Securities Dealers, Inc., NASD By-Laws, Art. I, p 1101(i) (April 1992) (hereinafter "NASD Manual"). The By-Laws define an "associated person of a member" as:
 
 
 24
 every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....
 
 
 25
 NASD Manual p 1101(m). The NASD By-Laws do not define the term "certain others." Plaintiffs concede that the majority of the parties to this suit are subject to NASD arbitration if the claims are found arbitrable. However, they argue that four of the defendants and one plaintiff cannot be required to submit their disputes to NASD arbitration. We do not agree.
 
 
 26
 Plaintiffs maintain that plaintiff McMahan & Co. and defendants Founders, Forest, Boyd Inc., and Boyd Pension cannot be "associated persons" because they are not natural persons. They rely on Tays v. Covenant Life Insurance Co., 964 F.2d 501 (5th Cir.1992) (per curiam), which held that a party must be a natural person to be considered an associated person under the NASD rules. The Fifth Circuit in Tays examined the language of p 1101(m) and noted that the term "natural person" appears several places in the definition of associated person and that "[r]eading the section as a whole demonstrates its focus on natural persons." Id. at 503. The court referenced our opinion in the case of Fleck v. E.F. Hutton Group, Inc., 891 F.2d 1047 (2d Cir.1989), where we stated in dicta in a footnote that there "is debate over whether a corporate entity can be a person under" Sec. 8(a) and reiterated the plaintiff's argument that p 1101(m) "defines associated persons as natural persons." Id. at 1054 n. 4.
 
 
 27
 Defendants urge us not to follow Tays. They claim that McMahan & Co., Founders, Boyd Inc., and Boyd Pension must be considered "associated persons" because each is a "partner" of its respective member. They argue that under the plain language of p 1101(m), a "partner ... of any member" constitutes an associated person whether or not the partner is a natural person. As for Forest, which is not a partner of either member but only a registered investment advisor of Forum and Founders, defendants claim that at the very least Forest would fall within the ambit of "certain other[ ]" parties subject to arbitration under Sec. 8(a). We believe that defendants offer the more persuasive argument on this score.
 
 
 28
 The plain language of the NASD definition of associated person states that "every ... partner" of a member shall be considered an associated person of a member. To be sure, the definition also refers to "any natural person," but the usage of the term "natural person" in these latter clauses indicates that the limitation does not modify the terms already listed, including "partner." Indeed, the "associated person" definition begins by stating that the term refers to "every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member." NASD Manual p 1101(m) (emphasis added). If the term "partner" was confined to natural persons, the subsequent phrase "or any natural person occupying a similar status" would be redundant. Moreover, if the NASD intended that "partners" be so confined, it could have easily used the phrase "any other natural person" to make its meaning clear. We thus decline to follow the Fifth Circuit's reasoning in Tays and hold that the NASD By-Laws do not invariably require an "associated person" to be a natural person, at least where the entity in question is a partner of a member.
 
 
 29
 Our conclusion is bolstered by several considerations. First, the NASD Rules of Fair Practice, which are promulgated by the NASD on the same authority as the NASD Code of Arbitration, define "person" to include "any natural person, partnership, corporation, association, or other legal entity." NASD Manual p 2101. Furthermore, the underlying statutory provisions of the Securities Exchange Act of 1934 do not limit associated persons to natural persons. See 15 U.S.C. Sec. 78c(a)(9) & (21). Finally, as a policy matter, if individuals could avoid the NASD arbitration requirements merely by affiliating with members only indirectly through a business entity such as a corporation or partnership, they could easily frustrate the NASD's firm policy of submitting industry disputes to binding arbitration.
 
 
 30
 For similar reasons, we also believe that Forest, though not a partner of any member, is sufficiently immersed in the underlying controversy for it to be considered a "certain other[ ]" party under Sec. 8(a). A person who is neither a member nor an associated person is nevertheless appropriately joined in the arbitration where that party plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), and has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration. Cf. Farrand v. Lutheran Bhd., 993 F.2d 1253, 1254-55 (7th Cir.1993) ("or others" in Sec. 1(2) refers to " 'others' similar to" those expressly mentioned in the NASD Code). Forest is closely affiliated with numerous parties enmeshed in the underlying dispute. As plaintiffs' complaint attests, Forest is a "registered investment advisor and affiliate of Forum." Further, Founders, which is an "associated person" under Sec. 8(a), is Forest's general partner. Finally, York, who is concededly subject to arbitration, is intimately connected with Forest as president of the corporation which has Forest as its sole shareholder. The cumulation of all these circumstances, we believe, makes Forest a proper party to arbitration under the NASD Code.
 
 
 31
 B. Are the Claims Arbitrable?
 
 
 32
 We turn next to whether plaintiffs' claims are covered by the subject matter provisions of the NASD Code. In conducting such an inquiry, we are mindful that the "federal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible" and that "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194-95 (2d Cir.1984) (internal quotations and citations omitted). As mentioned earlier, for the claims to be arbitrable under Sec. 8(a) of the NASD Code, they must arise "in connection with the business" of members or arise "in connection with the activities of ... associated person(s)." We believe that the claims in this case do.
 
 
 33
 Plaintiffs' complaint raises multiple causes of action arising from the departing individuals' alleged misappropriation of McMahan Securities' trade secrets and computer system. The introductory statement in their complaint summarizes plaintiffs' theory of this dispute: "Despite ... clear agreements and understandings, and accompanying fiduciary duties, duties of loyalty and other obligations that Boyd and other defendants owed to McMahan Securities and its partners, Boyd and the other defendants, individually and/or in concert with others, decided to steal for themselves virtually the entire business of McMahan Securities and set up a duplicate 'clone' of it in the same town, Greenwich, Connecticut." Plaintiffs' complaint thus alleges that defendants transgressed numerous duties and laws in the process of leaving McMahan Securities and forming Forum.
 
 
 34
 These allegations plainly arise "in connection with the business" of McMahan Securities and Forum and "in connection with the activities of ... associated person(s)" York, Boyd, and the other defendants. Both NASD-member firms are in the business of trading convertible securities. Part of that business involves the use of computer systems in forecasting and trading; indeed, apart from human resources, it is hard to imagine a more integral component of a brokerage business than its computer system. Plaintiffs' claim that defendants purloined their computer system as well as other business secrets easily falls within the broad scope of affairs "arising in connection with the business" of both McMahan Securities and Forum. Furthermore, it is exactly the alleged improper "activities" of York and Boyd and the other "associated persons" that plaintiffs claim warrant relief in the federal courts. Judged in light of the Supreme Court's directive that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941, we conclude that the claims brought in plaintiffs' complaint must be arbitrated under the NASD Code.
 
 
 35
 We are not impressed by plaintiffs' continued attempts to label their claims as a simple "employment dispute." By so classifying their claims, plaintiffs seek to wedge this case into the pigeonhole of Farrand v. Lutheran Brotherhood, supra. In Farrand, the Seventh Circuit held that the then-applicable NASD Code of Arbitration did not encompass employment-related disputes in a case in which an employee stockbroker brought an age discrimination suit against his employer. Regardless of whether the Seventh Circuit's interpretation of the NASD Code was correct, see Order Approving Proposed Rule Change Relating to the Scope of the NASD Arbitration Code of Procedure, SEC Rel. No. 34-32802, 1993 WL 328342, 58 Fed.Reg. 45932, 45933 (Aug. 25, 1993) (citing Farrand as a case requiring amendment of the NASD Code "to clarify that employment related disputes are arbitrable under Section 8"), the claims brought in this suit extend far beyond a simple employment dispute. The complaint alleges past and ongoing breaches of fiduciary duty and breaches of contract, theft and misappropriation, and copyright and securities violations. It does not fit the class of disputes which essentially involve only the terms and conditions of employment. See, e.g., Farrand, 993 F.2d at 1254 (age discrimination suit). Thus, any attempt to categorize this case as a simple employment dispute is unavailing.
 
 
 36
 Nor do we find persuasive plaintiffs' argument that its copyright claims are "unsuitable" for arbitration. Though the basis for this contention is less than perfectly clear, plaintiffs appear to argue that their copyright claims would be too complex for lay arbitrators to evaluate. However, as the Supreme Court has quite firmly stated, "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 626-27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); see also Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). While it is unclear from the current record whether the validity of plaintiffs' copyright will be at issue in this dispute, we find no bar to arbitrating plaintiffs' copyright claim in any event. See Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1199 (7th Cir.1987) (Posner, J.) ("We hold that federal law does not forbid arbitration of the validity of a copyright, at least where that validity becomes an issue in the arbitration of a contract dispute."); Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 231 (2d Cir.1982) ("[W]e see no public policy against arbitration of this claim for the infringement of a valid copyright."). Plaintiffs' copyright claims are part and parcel of its overall complaint--that defendants unlawfully misappropriated its trade secrets, including its copyrighted computer system. These claims must be arbitrated as well.
 
 CONCLUSION
 
 37
 For the foregoing reasons, we reverse the district court's order denying the motion to compel arbitration and remand the matter with instructions for the district court to direct the parties to proceed to arbitration.
 
 
 
 *
 The Honorable Gregory W. Carman, Judge of the United States Court of International Trade, sitting by designation