LOMBARD SECURITIES
INCORPORATED,
Plaintiff

v.

THOMAS F. WHITE & CO., INC.

and

Lombard Institutional Brokerage,
Inc., Defendants.

Civ. A. No. AMD 94–1853.

United States District Court,
D. Maryland.

Oct. 20, 1995.

Gary C. Adler, O'Connor & Hannan, Washington, D.C., for plaintiff.

Francis Joseph Gorman, Gorman & Williams, Baltimore, MD and Gay Ann Spahn, Semmes, Bowen & Semmes, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

### I. INTRODUCTION

This case arises from a trademark dispute between Plaintiff, Lombard Securities, Inc. ("Lombard Securities"), and Defendants, Thomas F. White & Co., Inc. ("White") and Lombard Institutional Brokerage, Inc. ("Lombard Brokerage"). The matter is presently before this Court on Defendants' Motion to Stay Proceedings and Petition to Compel Arbitration, and Defendants' Motion for Sanctions under Rule 11. After reviewing the memoranda submitted by the parties, no hearing is deemed necessary. *See* Local Rule 105.6 (D.Md.1995). For the reasons set forth below, the Court shall grant the petition to compel arbitration, deny the motion for sanctions, and dismiss the case without prejudice.

### II. FACTS

All of the parties are members of the National Association of Securities Dealers ("NASD"), a national self-regulating association of broker-dealers. NASD is registered with the Securities and Exchange Commission under section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o–3.[1] Both Plaintiff Lombard Securities, a Maryland corporation, and Defendant White, a California corporation, are full-service broker-dealers selling securities and providing investment advice. Lombard Brokerage, a California corporation owned by White, is a "deep discount" brokerage firm which offers securities to retail customers at substantially discounted prices.

---

1. NASD has primary responsibility under the Exchange Act, subject to SEC oversight, for regulating those who sell securities in U.S. markets. The Exchange Act authorizes NASD to adopt rules to regulate the conduct of its member-brokerage firms and associated persons, and to enforce its rules through the imposition of sanctions. *See* Exchange Act Section 15A(b)(6), 15 U.S.C. § 78o (b)(6), and Section 19(e), 15 U.S.C. § 78s(e). Accordingly, NASD has promulgated By–Laws and Rules of Fair Practice (collectively, the "NASD Rules").

The NASD Rules are designed, inter alia, to: (1) prevent fraudulent and manipulative acts and practices; (2) promote just and equitable principles of trade; and (3) protect investors and the public interest. *See* NASD Manual By–Laws, Art. XII, § 1.

Lombard Securities claims that since December 1990 it has continuously used the trademarks "Lombard Securities Incorporated" and a specially designed "L" in interstate commerce. In January 1993, Lombard Brokerage allegedly began to use the name "Lombard Institutional Brokerage" with a similarly designed "L" in its advertisements. On May 18, 1993, Lombard Brokerage terminated its individual membership with NASD and began doing business as "Lombard Institutional Brokerage, a Division of Thomas White & Co., Inc." On July 13, 1994, NASD approved Lombard Brokerage's application for NASD membership and license to sell securities, despite having knowledge of the dispute between Lombard Securities and Lombard Brokerage. In a letter to Lombard Brokerage, NASD urged the firms to resolve the trademark dispute between themselves.

Lombard Securities instituted suit in this Court against White and Lombard Brokerage for common law trademark infringement, "passing off," and false designation of origin. The original complaint named White as the sole defendant; Lombard Brokerage was added as a defendant in the amended complaint. Lombard Securities claims that Lombard Brokerage's use of the "Lombard" name and logo has resulted in confusion in the marketplace, and has caused Lombard Securities to incur substantial damage. White and Lombard Brokerage have filed motions urging this Court to stay proceedings, to compel the parties to arbitrate the dispute before NASD, and to impose sanctions against Lombard Securities and its attorneys.

## III. FEDERAL ARBITRATION ACT

■ The Federal Arbitration Act ("the Act"), 9 U.S.C. § 1 *et seq.*, enunciates a strong "federal policy favoring arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985). The Act provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for

the revocation of any contract." 9 U.S.C. § 2 (1988). The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, 9 U.S.C. § 3; and the Act authorizes a federal district court to issue an order compelling arbitration if there has been a failure to comply with the arbitration agreement, 9 U.S.C. § 4.

■ Consequently, "the Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941. It "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218, 105 S.Ct. at 1241; *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–27, 107 S.Ct. 2332, 2336–38, 96 L.Ed.2d 185 (1986); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991), *aff'g* 895 F.2d 195 (4th Cir.1990) (holding that a district court's duty to enforce an arbitration agreement is not diminished when a party to such agreement asserts a statutory claim).

■ This Court's inquiry into the propriety of compelling the arbitration of a dispute is a limited one. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991). The Court must determine: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *See* 9 U.S.C. § 4; *see also Moses H. Cone Hosp.*, 460 U.S. at 22, 103 S.Ct. at 940 (the Act calls for "an expeditious and summary hearing with only restricted inquiry into factual issues").

## IV. DISCUSSION

### A. There Exists a Valid Agreement to Arbitrate

The existence of a valid arbitration agreement is not genuinely in dispute. Based on the terms of the NASD Code of Arbitration Procedure ("NASD Code"), the parties, all members of NASD, have entered into a writ-

ten agreement binding them to arbitrate business-related disputes. The NASD Code provides for

> the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company: (1) between or among members; (2) between or among members and public customers, or others....

NASD Manual Code of Arbitration Procedure, Pt. I, § 1.[2]

■ Lombard Securities contends, however, that since Lombard Brokerage was not a member of NASD from May 1993 to July 1994, the period during which most of the alleged improper acts occurred, Lombard Brokerage does not have standing to compel arbitration before NASD. Lombard Securities argues that because the NASD Code only applies to members, NASD does not have jurisdiction to arbitrate matters concerning the alleged illegal conduct of a non-member. The Court finds this argument unpersuasive. *Cf. O'Neel v. Nat. Asso. Secs. Dealers, Inc.,* 667 F.2d 804, 806–807 (9th Cir.1982) (per curiam) (brokerage employee remains bound to arbitration agreement after termination of employment).

After Lombard Brokerage terminated its membership with NASD in May 1993, it continued selling securities as a "division" of White, a registered member of NASD. Lombard Brokerage was operating under White's broker-dealer license until its application for a separate license was granted by NASD in July 1994. During the period prior to Lombard Brokerage's renewed membership with NASD, Lombard Brokerage was engaged in the business of a broker-dealer, selling securities as a unit of White.[3] Consequently, Lombard Brokerage was subject to all rules and regulations of NASD, and therefore entitled to compel Lombard Securities to arbitration. *See Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1054 (2nd Cir.1989) (holding that an employee's claims against his employer's subsidiary which was not a New York Stock Exchange member were arbitrable as matters "arising in connection" with employee's activities as an "associated person" within the meaning of NYSE rules). Moreover, Lombard Brokerage is not the only defendant urging this Court to compel arbitration. White, a registered member of NASD during the period of the alleged trademark infringement, is the other named defendant moving this Court to compel arbitration. As a NASD member, White plainly is entitled to demand that the dispute be arbitrated. *See* NASD Code, *supra,* at note 2.

**B. The Agreement to Arbitrate Encompasses the Present Dispute**

■ The second step in this Court's inquiry is to determine whether the substantive scope of the NASD Code encompasses the present dispute. Lombard Securities contends that the NASD Code does not provide a *per se* rule, requiring the arbitration of every dispute between NASD members. Lombard Securities argues that its trademark infringement claim does not fall within the ambit of "any dispute, claim, or controversy arising out of or in connection with the business" of a NASD member. To support this contention, Lombard Securities cites numerous cases, involving employment discrim-

---

**2.** Further, Part I, Section 8 of the NASD Code provides in pertinent part:

> (a) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
> (1) a member against another member;
> (2) a member against a person associated with a member or a person associated with a member; and,

> (3) a person associated with a member against a person associated with a member....

**3.** Section 15(b)(8) of the Exchange Act provides:

> It shall be unlawful for any registered broker or dealer to effect any transaction in, or induce or attempt to induce the purchase or sale of, a security ... unless such broker or dealer is a member of a securities association registered pursuant section 78*o*–3 [section 15A] of [the Exchange Act] or effects transactions solely in securities on a national securities exchange of which it is a member.

15 U.S.C 78*o* (b)(8).

ination in the securities industry, in which courts have declined to compel arbitration. Those cases are inapposite to the present case. Employment discrimination cases, which generally involve Title VII claims, involve statutory claims that express a particular federal policy that must be weighed against the federal policy favoring the enforcement of arbitration agreements. *See, e.g., Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994) (the public policy of protecting victims of discrimination under Title VII is at least as strong as the public policy in favor of arbitration). As the Supreme Court stated in *Shearson/American Express Inc.,* 482 U.S. at 226–27, 107 S.Ct. at 2337:

> Like any statutory directive, the Arbitration Act's mandate may be overridden by contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.

Here, Lombard Securities does not allege a violation of a statutory right embodying countervailing public policy interests; all of its claims—trademark infringement, "passing off," and false designation of origin—arise from state common law. Nevertheless, Lombard Securities attempts to meet its burden by arguing that there is a critical public policy implicated in trademark infringement cases and that Congress recognized the importance of trademarks by enacting the Lanham Act of 1946, 15 U.S.C. § 1051 *et seq.* The Lanham Act created a federal regulatory scheme "to protect registered marks . . . [and] to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Therefore, Lombard Securities contends, the underlying public policy in trademarks is that they indicate the origin of a good or service, thereby aiding in the promotion of fair competition. This argument falls far short of suggesting that the Lanham Act is "a contrary congressional command" sufficient to override Congress's strong policy favoring arbitration. If Congress intended "to limit or prohibit waiver of a judicial forum for a particular claim such an intent will be deducible from the statute's text or legislative history." *Shearson/American Express Inc.,* 482 U.S. 220, 227, 107 S.Ct. 2332,

2337–38, 96 L.Ed.2d 185 (1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985) (internal quotation marks omitted)). Here, Lombard Securities has failed to make such a showing. *See Gilmer,* 500 U.S. at 26–33, 111 S.Ct. at 1652–56 (ADEA claim does not preclude enforcement of agreement for arbitration). Additionally, Lombard Securities is unable to find any protection in the purpose of the Lanham Act because it does not have a federally-registered trademark.

Lombard Securities also argues that in cases involving the securities industry, courts have compelled arbitration only when the underlying claim involves employment or business transaction disputes. It argues that because the present trademark claim does not fall within one of these categories, this Court should not compel arbitration. The Court disagrees with such a limited interpretation of the NASD Code's arbitration provisions. There are numerous cases involving the securities industry in which the underlying claim does not involve specifically employment or business transaction disputes. *See McMahan Securities Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82 (2nd Cir. 1994) (copyright claim); *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704 (7th Cir.1994) (defamation claim); *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447 (9th Cir.1986) (defamation, invasion of privacy and intentional infliction of emotional distress). In the above cited cases, arbitration was compelled on the basis that the underlying dispute involved matters "arising out of or in connection with the business" of a member of NASD. In *McMahan,* for example, the court held that a copyright dispute between NASD members is arbitrable under the NASD Code. The Second Circuit rejected the arguments that copyright claims are too complex for arbitration, and that there is a public policy against the arbitration of copyright claims. *See* 35 F.3d at 89. The court held that because the plaintiff's complaint raised multiple causes of action arising from the alleged misappropriation of trade secrets and computer systems, the copyright infringement allegation is "part and parcel" of the overall complaint. *Id.* A copyright claim that is related to the business of a

NASD member is therefore arbitrable. Like reasoning supports the result here.[4]

Furthermore, the NASD Rules specifically regulate the type of conduct that Lombard Securities seeks to remedy. NASD By–Laws provides:

> No person or firm shall be admitted to or continued in membership in [NASD] having a name which is identical to the name of another member appearing on the membership roll of [NASD] or a name so similar to any such name as to tend to confuse or misled.

NASD Manual By–Laws, Art. III, § 2(a). Lombard Securities' trademark claim is therefore a matter within the substantive scope of NASD arbitration provisions.

### V. SANCTIONS

■ White and Lombard Brokerage have moved for sanctions against Lombard Securities and its counsel for causing them to file unnecessary motions. Defendants argue that a reasonable investigation by counsel of the facts and the law surrounding the claims presented here would have disclosed that arbitration would be mandated. Rule 11 requires parties to conduct a reasonable inquiry into the factual and legal bases of claims before filing a lawsuit. Fed.R.Civ.P. 11(b). It also authorizes courts to impose sanctions against parties and counsel for dilatory or abusive tactics. Fed.R.Civ.P. 11(c); *see also Brubaker v. City of Richmond,* 943 F.2d 1363, 1373–88 (4th Cir.1991).

■ The Court declines to impose sanctions against Lombard Securities or its counsel. Determination of the scope of the NASD Code and Rules concerned in this matter was not without some measure of uncertainty. *See Whiteside v. Teltech Corp.,* 940 F.2d 99, 103 (4th Cir.1991). It cannot be said that Lombard Securities conducted less than a "minimal investigation" into the factual and legal bases for its claims. *Cleveland*

*Demolition Co. v. Azcon Scrap Corp.,* 827 F.2d 984, 987 (4th Cir.1987). Accordingly, Defendants' motion for sanctions shall be denied.

### VI. DISMISSAL

■ For reasons not expressly stated in the record, defendants have sought a stay but not outright dismissal of this case. Nevertheless, federal district courts are vested with the inherent power to control and protect the administration of court proceedings. *White v. Raymark Indus., Inc.,* 783 F.2d 1175, 1177 (4th Cir.1986). "Under the inherent power, a court may issue orders ... and dismiss actions." *United States v. Shaffer Equipment Co.,* 11 F.3d 450, 461 (4th Cir. 1993). The Court's authority to dismiss a party's case sua sponte is "an inherent power governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

■ Other courts have recognized the propriety of a dismissal rather than a stay pending arbitration under appropriate circumstances. *See Arnold v. Arnold Corp.,* 920 F.2d 1269, 1275–1276 (6th Cir.1990); *Cherry v. Wertheim Schroder & Co., Inc.,* 868 F.Supp. 830, 836 (D.S.C.1994). There is no reason apparent to this Court why complete relief will not be available to plaintiff in the arbitration proceedings ordered herein. If necessary and appropriate, plaintiff shall be free to institute an action to enforce or otherwise to seek review of the regularity of the NASD arbitration proceedings. Accordingly, in the exercise of its discretion, this Court shall dismiss this case without prejudice.

---

**4.** Lombard Securities also broadly challenges the adequacy of NASD arbitration procedures. Lombard Securities questions the competency and integrity of NASD arbitrators. As the Supreme Court has stated repeatedly: "We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, consci-

entious and impartial arbitrators." *Gilmer,* 500 U.S. at 30, 111 S.Ct. at 1654 (quoting *Mitsubishi,* 473 U.S. at 634, 105 S.Ct. at 3357–58). Federal courts are "well past the time when judicial suspicion of the desirability of arbitration and the competence of the arbitral tribunal inhibited the development of arbitration as an alternative

## VII. CONCLUSION

For the reasons set forth above, the Court finds that the parties' membership in NASD evidences their agreement to arbitrate their disputes before NASD, and that the alleged trademark infringement claims come within the substantive scope of the NASD Code arbitration provisions. Thus, this Court shall grant the petition to compel arbitration. The Court also finds that Lombard Securities' previous refusal to proceed to arbitration as demanded by defendants, under the circumstances of this case, does not support the imposition of sanctions, therefore, defendants' motion for sanctions shall be denied. In the exercise of its discretion, the Court shall dismiss, rather than stay, these proceedings.

means of dispute resolution." *Mitsubishi*, 473 U.S. at 626–27, 105 S.Ct. at 3353–54.

