[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STAY #102 MOTION TO EXTEND TIME #110
John J. Flynn, Jr. and Clairvoyant Capital, LLC (Clairvoyant), (collectively, the plaintiffs) commenced this action on July 30, 2001 against Greenwich Global, LLC (GGLLC), Oliver Bierne Chisolm, James F. Manning and John L. Parent (collectively, the defendants). The plaintiffs' complaint alleges six counts. Count one sounds in conversion and civil theft, count two sounds in breach of fiduciary duty, count three sounds in civil conspiracy, count four sounds in defamation by libel per se, count five is a demand for an accounting and count six is a request for dissolution of GGLLC. On September 26, 2001, the defendants moved to stay this action pursuant to General Statutes § 52-409 and in the alternative, pursuant to the Federal Arbitration Act,9 U.S.C. § 3. On December 3, 2001, the defendants made a motion for an extension of time to respond to the plaintiffs' first set of CT Page 7920 interrogatories and requests for production.
The plaintiffs' Complaint alleges the following pertinent facts: In 1997, Flynn established Clairvoyant for the purposes of acquiring Greenwich Global, LP (GGLP). Flynn became and is the managing member and president of Clairvoyant. In 1998, Clairvoyant acquired GGLP. A partnership agreement stated that GGLP was organized for the purpose of acting as a registered broker-dealer for buying and selling securities. The partnership agreement made Clairvoyant a general partner, and Flynn and Chisolm limited partners. Manning later became a limited partner of GGLP. GGLP elected Parent to serve as executive vice-president of GGLP. Under the partnership agreement, Clairvoyant had exclusive authority to manage the day-to-day operations of GGLP. Therefore, as the managing member of Clairvoyant, Flynn oversaw the business and day-to-day operations of GGLP.
The plaintiffs Complaint further alleges: on or about September 30, 2000, Flynn and Clairvoyant entered into an oral agreement with GGLP whereby Flynn and Clairvoyant were to withdraw as limited and general partners of GGLP, and GGLP was to return to Flynn and Clairvoyant their capital contributions and disburse any outstanding income to GGLP's partners. The defendants failed to return Flynn and Clairvoyant's capital contributions or their pro rata share of the partnership interests. On December 12, 2000, Parent filed a form U-5 which terminated Flynn's registration with the NASD. The form U-5 contained false information.
The plaintiffs Complaint further alleges: Chisolm, Parent and Manning, acting together, converted GGLP's partnership interests for their own benefit and purported to convert it into GGLLC, the successor-in-interest of GGLP. Chisolm, Manning and Parent's duties, liabilities and obligations of GGLP succeeded to GGLLC. GGLLC is licensed as a broker-dealer in Connecticut and is licensed with the Securities and Exchange Commission and is a member of the National Association of Securities Dealers (NASD). The conversion of GGLP to GGLLC was done without the authority of Clairvoyant or Flynn.
 I.
As a preliminary matter, the court notes that the defendants have moved to stay this action pursuant to § 52-409[1] or alternatively, pursuant to 9 U.S.C. § 3[2] It is well-settled that state courts have jurisdiction to hear cases arising under the [Federal Arbitration Act.]." (Internal quotation marks omitted.) Saltzman v. The Travelers,Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549057 (January 5, 1996, Hennessey, J.). "[I]n a situation where the parties have chosen in their agreement to abide by CT Page 7921 the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be inimical to the policies underlying state and federal arbitration law . . . because it would force the parties to arbitrate in a manner contrary to their agreement." (Ellipses in original; internal quotation marks omitted.) Merrill Lynch Co. v. Waterbury, 34 Conn. App. 11, 16, 640 A.2d t22 (1994), citing, VoltInformation Sciences, Inc. v. Stanford University, 489 U.S. 468, 472,109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).
In the case at bar, there is no pre-dispute arbitration agreement mandating the abdication of state contractual law. Moreover, both parties arguments focus on whether or not the parties and their dispute fall under the ambit of the NASD Code. The court recognizes that Connecticut case law is not instructive in interpreting the NASD Code, therefore, the court will apply federal law. See Infinex Investments, Inc. v. Dise, Superior Court, judicial district of Danbury, Docket No. 340674 (December 12, 2000, Hiller, J.) (court applied federal law to determine whether parties fell under the NASD Code); Saltzman v. The Travelers, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549057 (January 5, 1996, Hennessey, J.) (court applied federal law to determine whether securities dealer's case fell under the Federal Arbitration Act.)
In the absence of an arbitration agreement, in order for the court to find clear and unmistakable evidence that the parties agreed to arbitrate, this dispute must fall under the requirements mandating arbitration under the NASD Code of Arbitration Procedure (NASD Code). Those requirements are found in Rule 10101 and 10201 of the NASD Code.
Rule 10101 entitled "Matters Eligible for Submission" states that: "[A]ny dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person (s) with any member. . . ." Rule 10201 entitled "Required Submission" describes a subset of issues as to which certain parties can compel arbitration. It states that: "(a) . . . a dispute, claim, or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member (s) or in connection with the activities of such associated person (s), or arising out of the employment or termination of employment of such associated person (s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member." CT Page 7922
With regard to the dispute at bar, the relevant inquiry is whether the defendants can compel arbitration under Rule 10201. The court will therefore first analyze whether all of the parties are "members" or "person associated with a member" under Rule 10201. Second the court will examine whether their dispute arises out of those circumstances enumerated under Rule 10101.
 II.
The defendants argue that because Clairvoyant, Flynn, Chisolm and Manning are all partners of GGLLC, an NASD member, and that Parent is an officer that they are all "person[s] associated of a member" under Rule 10201. For this reason, the defendants claim, that they can compel arbitration under the NASD Code. The defendants also argue, in the alternative, that even if Clairvoyant is not a person associated with a member, Clairvoyant is a "certain other" under the NASD By-Laws. They furthermore argue that all of the claims asserted by the plaintiffs arise out of or are connected with the business of an NASD member or arise out of the employment or termination of employment of an associated person. In response, the plaintiffs argue that neither Clairvoyant nor Flynn are "members" of the NASD or "persons associated with a member" and thus this case does not fall under the ambit of the NASD Code.
The NASD By-Laws defines "member" as "any broker or dealer admitted to membership in the NASD." NASD By-Laws, Art. I, 1101(q). A brokerage firm's membership in the NASD, in and of itself, is a written agreement to arbitrate according to NASD Code. See Kidder, Peabody Co. v.Zinsmeyer Trusts Partnership, 41 F.3d 861, 863-64 (2d Cir. 1994). In this case, it is alleged that GGLP was organized for the purpose of acting as a registered broker-dealer for buying and selling securities. The court, therefore, assumes GGLP is registered with the NASD. For this reason it is a "member" under Rule 10201. It is also in the plaintiffs Complaint and therefore, the court takes as true that GGLLC is licensed as a broker-dealer in Connecticut, and is a member of the NASD. For this reason GGLLC is also a member under Rule 10201. Regardless of the disputes over which corporate entity exists, they are both members under Rule 10201. For purposes of clarity the court will refer only to GGLP to refer to both corporate entities for the remaining part of this decision.
The remaining defendants, Chisolm, Manning and Parent are not members of the NASD. It is therefore necessary to determine whether they are "person[s] associated with a member" under Rule 10201. The NASD By-Laws define a "person associated with a member" or "associated person of a member" as a "(1) a natural person who is registered or has applied for a registration under the Rules of the Association; (2) a sole proprietor, CT Page 7923 partner, officer, director or branch manager of a member; or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member. . . ." NASD By-Laws, Art. I, 1101 (ee); John Hancock Life Ins. Co. v.Wilson, 254 F.3d 48, 51 (2d Cir. 2001). Chisolm and Manning are limited partners of GGLP. As partners of GGLP, a member of the NASD, they are "person[s] associated with a member" under the NASD By-Laws. Parent is an officer of GGLP because he is the executive vice-president of GGLP. As a an officer of GGLP, a member of the NASD, Parent is also a "person associated with a member" under the NASD By-Laws.
As for Flynn, the plaintiffs concede in their memorandum of law that Flynn submitted a form U-4[3] and requested registration with the NASD as a registered representative of GGLP in January of 1998. The plaintiffs argue that although Flynn was a "member" under Rule 10201 while he was registered with the NASD, Flynn was subsequently fired when a form U-5[4]
was filed and was no longer a registered broker. Therefore, the plaintiffs argue that Flynn is not bound to arbitrate the action that he has brought forth.
Although Flynn is not currently registered with the NASD, he was registered and did have a form U-4 contract with GGLP before he was fired. The Second Circuit has repeatedly and impliedly found that even if the plaintiff is not currently a "member" of the NASD when he brings a lawsuit, as long as the plaintiffs tort claims "involve significant aspects of the employment relationship" it is subject to arbitration.Fleck v. E.F. Hutton Group, Inc., 891 F.2d 1047, 1053 (2d Cir. 1989); see also Fahnestock Co., Inc. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991), cert. denied, 502 U.S. 1120, 112 S.Ct. 1241, 117 L.Ed.2d 474
(statements in the form U-5 defaming the plaintiff were subject to arbitration although the plaintiff was no longer a "member" under the NASD); Thomas James Associates, Inc. v. Jameson, 102 F.3d 60, 66 (2d Cir. 1996) (same). For this reason, the court concludes that Flynn's past membership with the NASD coupled with the fact that his claims involve significant aspects of his employment relations, is sufficient to consider him a "member" under Rule 10201.
With regard to Clairvoyant, the defendants argue that although Clairvoyant is not a "member" of the NASD, it is an "associated person" of GGLP and in the alternative that Clairvoyant is a "certain other" under Rule 10201. Although the defendants argument that Clairvoyant is an "associated person" fails because it is a corporate entity,[5] the court finds for the preceding reasons that Clairvoyant is a "certain other" and falls within the breadth of the NASD Code. CT Page 7924
Rule 10201 does contemplate that "certain others" may be parties to an arbitration under the NASD Code. Rule 10201 limits the persons who have the power to compel arbitration to a "member" or a "person associated with a member." One who is a "certain other" may participate in a NASD arbitration, but such an entity "does not fall within a class of persons having power to compel arbitration under the NASD Code." Burns v. NewYork Life Ins. Co., 202 F.3d 616, 622 (2d Cir. 2000) (per curiam). The reference to "certain others" as potential parties in Rule 10201 was intended to allow for joinder in the arbitration if there were nonmembers involved in a dispute between "members" and "persons associated with members." Id., 621-622. The Second Circuit has established three requirements to be met before a "certain other" can be joined in an arbitration. Id., 622, citing, McMahan Sec. Co., L.P. v. Forum CapitalMarkets, L.P., 35 F.3d 88 (2d Cir. 1994).[6] In McMahan, the Second Circuit stated that "[a] person who is neither a member nor an associated person is nevertheless appropriately joined in the arbitration where that party plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), and has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration." (Internal quotation marks omitted.) Thomas JamesAssociation v. Jameson, supra, 102 F.3d 60, citing, McMahan Sec. Co.,L.P. v. Forum Capital Markets, L.P., supra, 35 F.3d 87-88.
Applying this standard to the facts involving Clairvoyant, the court finds, first, that Clairvoyant was the general partner of GGLP and is therefore "closely affiliated with [a party] enmeshed in the underlying dispute." McMahan Sec. Co., L.P. v. Forum Capital Markets, L.P., supra, 35 F.3d 88. Second, while there is no indication that Clairvoyant has executed an arbitration agreement, it is an "instrument" of Flynn. Flynn is the managing member and President of Clairvoyant and Flynn is a party to the arbitration. Third, because Clairvoyant is a corporate entity controlled by Flynn, both "voluntarily participated in the particular events giving rise to" the plaintiffs' claims. Id., 88. Guided by the "strong federal policy favoring arbitration," New York v. Oneida IndianNation of New York, 90 F.3d 58, 61 (2d Cir. 1996); the court finds that "[t]he cumulation of all these circumstances" make Clairvoyant a "proper party to arbitration under the NASD Code." McMahan Sec. Co., L.P. v. ForumCapital Markets, L.P., supra, 35 F.3d 88.
 III.
Under the NASD Code to be subject to arbitration, the plaintiffs' claims must be "arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person (s) with any member. . . ." CT Page 7925 Rule 10101. The court will now determine whether the plaintiffs' six counts fall within the scope of the NASD Code.
The plaintiffs' first count sounds in conversion and civil theft of the partnership assets of GGLP. This claim is premised upon the defendants alleged appropriation and misuse of plaintiffs' interest in GGLP and the fact that the defendants allegedly acted outside the scope of their authority in conducting GGLP's business. The court concludes that such a claim arises in connection with the business of GGLP. See Alter v.Englander, 901 F. Sup. 151, 155, (S.D.N.Y. 1995) (court held that dispute between former partners concerning breach of contract under which securities were distributed was subject to arbitration provisions of the American Stock Exchange.)
The plaintiffs' second count sounds in breach of fiduciary duty. This count alleges that the defendants have used the assets of GGLP, including capital contributions of Clairvoyant and Flynn, for the benefit of the defendants and to the detriment of the plaintiffs. Moreover, the plaintiffs allege that the defendants breached their fiduciary duty owed to the plaintiffs by removing Flynn and Clairvoyant from GGLP, failing to allocate net profits and return partnership capital to Flynn and Clairvoyant, and continuing to use the assets of GGLP for their own benefit. These facts satisfy the NASD Code because they arise in connection with the business of GGLP.
The plaintiffs' third count sounds in civil conspiracy and is premised on the same allegations as the first two counts. The plaintiffs allege that the defendants conspired to deny plaintiffs their interest in GGLP, to remove Clairvoyant and Flynn as partners, and to convert GGLP into GGLLC. The court acknowledges that because these allegations pertain to the use of the assets of GGLP, as well as control of GGLP, this claim arises in connection with the business of GGLP.
The plaintiffs' fourth count sounds in defamation by libel per se. In this claim the plaintiffs allege that the defendants filed a form U-5 with defamatory statements in the form. The plaintiffs argue that because the form U-5 was submitted after Flynn was terminated from employment, this claim is not subject to arbitration. Thus, the plaintiffs argue, that these claims do not arise "out of the employment or termination of employment," according to the principles of Coudert v. Paine WebberJackson Curtis, 705 F.2d 78, 82 (2d Cir. 1983).
In Coudert, the Second Circuit held that an employees claims of post-employment tortious conduct did not have to be arbitrated because they involved false statements that the employer made to describe the employee after the termination. Id. In Coudert, the Second Circuit CT Page 7926 focused on whether the dispute "pertains to either employment or termination, or whether it simply alleges tortious conduct arising after termination," Id. The Second Circuit stated that "only grievances based on conditions arising `during the term of the agreement to arbitrate' are subject to arbitration after the term has ended." Id., 81. Thus, Coudert
gave the timing of the alleged torts a great deal of weight. Id.
The Second Circuit subsequently overturned the reasoning of Coudert
regarding the defamation analysis. Fleck v. E.F. Hutton Group, Inc.,891 F.2d 1047, 1051 (2d Cir. 1989). The Fleck court found that "the timing of the alleged torts is less significant." Id. In Fleck, the Second Circuit found that tort claims are subject to arbitration regardless of whether they were during or after employment as long as they "involve significant aspects of the employment relationship." In determining this new standard, the Second Circuit went on to determine that defamation claims based on statements in a Form U-5 are subject to arbitration because they involve significant aspects of the employment relationship. Id.; See Fahnestock Co., Inc. v. Waltman, supra, 935 F.2d 516 (statements in the U-5 form defaming plaintiff were related to performance and therefore subject to arbitration); Thomas JamesAssociates, Inc. v. Jameson, 102 F.3d 660 (same).
The fifth and sixth counts seek an accounting and a dissolution of GGLLC. The court finds that both of these counts arise in connection with the business of GGLP. For this reason, this count along with all of the plaintiffs' counts arise in connection with the business of GGLP and are, therefore, subject to arbitration according to the NASD Code.
 IV.
The plaintiffs argue that the defendants have waived their right to stay plaintiffs' action because GGLLC sued Clairvoyant previously (the prior action) and GGLLC never sought to enforce any arbitration right. SeeGreenwich Global, LLC v. Clairvoyant Capital, LLC, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 0182930 (March 14, 2001). The plaintiffs claim that Clairvoyant answered and filed a counterclaim in the prior action. GGLLC, in turn, replied by answering and filing special defenses but never asserted that its action was subject to arbitration under the NASD Code.
"Waiver is the intentional relinquishment of a known right." AnnHoward's Apricots Restaurant v. CHRO, 237 Conn. 209, 233, 676 A.2d 844
(1996). "A party seeking to assert the defense of waiver must show that he was substantially prejudiced. . . . Waiver is an issue of fact. . . . In order to determine whether a party has been substantially prejudiced, many factors must be considered, not the least of which is whether the CT Page 7927 claims that the defendants seek to assert in the arbitration are the same as those asserted in the prior litigation and whether initiation of the arbitration constituted an unjustifiable delay." (Citations omitted; internal quotation marks omitted.) Advest, Inc. v. Wachtel, 235 Conn. 559,569, 668 A.2d 367 (1995). With regard to the issue at bar, the "essential question is whether, under the totality of circumstances, the . . . [party claiming arbitration] has acted inconsistently with the arbitration right." (Brackets in original; ellipses in original; internal quotation marks omitted.) Stevens v. Hartford Accident Indemnity Co.,39 Conn. App. 429, 436, 664 A.2d 826 (1995).
"Initiation or participation in litigation are not the only grounds upon which a finding of waiver can be made. Any conduct showing a party did not regard the arbitration agreement in effect or that it did not intend to avail itself of such a provision can constitute waiver." (Internal quotation marks omitted.) Stankus v. Anthem Casualty Ins.Group, Superior Court, judicial district of Waterbury, Docket No. 149116 (March 1, 2001; Rogers, J.); Personal Reminders v. SNET Mobility, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 160743 (September 25, 1998, Karazin, J.); Levine v. Advest, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 541857 (July 18, 1995, Corradino, J.) (14 Conn.L.Rptr. 507), rev'd on other grounds, 224 Conn. 732, 714 A.2d 649 (1998); see SylviaConstruction Company v. BJR Construction, Inc., Superior Court, judicial district of New London, Docket No. 509246 (January 23, 1991, Axelrod, J.) (defendant waived right to arbitrate because defendant filed responsive pleadings and conducted discovery); Premier Roofing Co., Inc. v. Ins. Co.of North America, Superior Court, judicial district of Danbury, Docket No 312438 (November 22, 1996, Stodolink, J.) (defendant waived right to arbitrate because defendant litigated for over three years, engaged in extensive pleading and motion practice, discovery and pretrial proceedings); see also Naftzger v. Naftzger Kuhe, Inc., 26 Conn. App. 521,602 A.2d 606 (1992) (attorney trial referee found that defendant waived right to arbitrate after both parties presented evidence at a hearing); but see Personal Reminders v. SNET Mobility, supra, Superior Court, Docket No. 160743 (September 25, 1998, Karazin, J.) (no waiver of arbitration clause when defendant's motion to dismiss filed less than a year after original complaint and defendant never filed answer.)
In the present case, the prior action does not include the same claims for relief and does not include the same parties. Neither Flynn, Chisolm, Manning, nor Parent are parties to the prior action thus the previous action could not have been a waiver of a known right. In addition, only two months have passed since the initiation of the case and the defendants' present motion to stay. Moreover, no discovery has taken place, no motion practice has taken place, and despite the fact CT Page 7928 that the pleadings have been closed, the parties have not had even one pre-trial conference. For these reasons, the court finds that the plaintiffs have not been prejudiced and that the defendants did not waive their right to arbitrate.
 CONCLUSION
The court concludes that because the plaintiffs and defendants are either "members," "person[s] associated with a member" or "certain others" under the NASD Code and because the plaintiffs claims arise in connection with the business of a member under the NASD Code, this action is subject to arbitration. Accordingly, the defendants' motion to stay, pursuant to § 52-409 and alternatively 9 U.S.C. § 3, is granted. Consequently, the court need not rule on the defendants' motion for an extension of time to respond to the plaintiffs' first set of interrogatories and requests for production.
 ___________________ MINTZ, J.