Michael E. MARCIANO,
et al., Plaintiffs,

v.

MONY LIFE INSURANCE
COMPANY, et al.,
Defendants.

Civil Action No. 05–4748.

United States District Court,
E.D. Pennsylvania.

Jan. 22, 2007.

**520**

Michael J. Glasheen, McCarter & English, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Ethan N. Halberstadt, Halberstadt Curley LLC, Conshohocken, PA, for Plaintiffs.

### TABLE OF CONTENTS

I. INTRODUCTION ..................................................521

II. BACKGROUND ...................................................521
 A. Procedural and Factual History .........................521
 B. The Arbitration Agreement and the NASD Provisions ......522
 1. Form U–4 ..........................................523
 2. NASD provisions ...................................523

III. DISCUSSION ...................................................524
 A. Law ...................................................524
 1. Federal law applies ...............................524
 2. The legal standard under the Federal Arbitration Act ....525
 B. Analysis ..............................................527
 1. Each party's definition under the NASD Code ..........527
 a. The Marcianos are "associated persons" under the NASD Code.....527
 b. MONY Life is not an "associated person" under the NASD Code.....527
 c. MONY Life is a "certain other" under the NASD Code ..............528
 (i) The proper McMahan "test".................................529
 (ii) McMahan's "sufficient immersion" test ......................531
 (iii) A textual analysis of the NASD provision ...................531
 (iv) The Third Circuit's guidance in Prudential ..................532
 (v) Application of the "sufficient immersion" test to the
 situation at bar .......................................533
 2. Each party's powers and responsibilities under the NASD Code and
 Form U–4 .........................................534
 a. A "certain other" cannot compel arbitration under the NASD
 Code .........................................534
 b. A "certain other" can compel arbitration against an "associated
 person" under Form U–4 ......................................535
 3. Application .......................................536
 a. MONY Life (a "certain other") cannot compel arbitration under
 the NASD Code ...............................................536
 b. MONY Life (a "certain other") can compel arbitration against the
 Marcianos ("associated persons") under Form U–4 ...............536

IV. CONCLUSION ...................................................537

## I. INTRODUCTION

Plaintiffs have sued MONY Life Insurance Company (MONY Life) and affiliated companies for actions that precipitated Plaintiffs' departure from the MONY organization. MONY Life has moved to compel arbitration under the National Association of Securities Dealers (NASD) Code of Arbitration. MONY Life, however, is not a member of the NASD. The arbitration agreement at issue is between Plaintiffs and the NASD, and the agreement expressly obligates Plaintiffs to arbitrate with a MONY Life subsidiary.

The issue before the Court is whether MONY Life may compel arbitration of a dispute between Plaintiffs and MONY Life involving a matter within the scope of a securities industry arbitration agreement between Plaintiffs and the NASD that mandates arbitration between Plaintiffs and a MONY Life subsidiary. Or, put another way, whether Plaintiffs agreed to submit to arbitration a dispute between themselves and MONY Life when they executed a contract that requires, by its express terms, arbitration between Plaintiffs and a MONY Life subsidiary.

The Court concludes that under the circumstances in this case MONY Life may compel Plaintiffs to arbitrate the dispute.

## II. BACKGROUND

### A. *Procedural and Factual History*

Plaintiffs commenced this action in the Philadelphia County Court of Common Pleas on July 8, 2005; on September 2, 2005, Defendants removed the case to the Eastern District of Pennsylvania, based on diversity jurisdiction.

According to the Complaint, Plaintiffs, brothers Michael E. Marciano and Joseph Marciano (collectively, Marcianos), had worked as insurance salespeople (among other positions) for MONY[1] since 1979 and 1986, respectively. On July 7, 2004, after an investigation into the purchase and solicitation of a private securities transaction, MONY sanctioned both brothers. The sanctions included suspension and a fine. Joseph Marciano resigned immediately, and Michael Marciano resigned shortly after the period of suspension was over and he had paid the fine. Plaintiffs contend they were improperly sanctioned by MONY in order to appease NASD regulators. They assert claims for defamation, wrongful discharge, intentional infliction of emotional distress, intentional interference with existing and prospective contractual relations, misrepresentation/fraud, negligence and failure to supervise, and breach of contract.

The Complaint names seven defendants: MONY Securities Corporation; The MONY Group, Inc.; MONY Brokerage, Inc.; MONY Life Insurance Company; Mutual Life Insurance Company of New York; AXA Advisors, LLC; and AXA Financial, Inc. Defendants can be conveniently grouped into three categories[2]: the MONY Life defendants (MONY Life Insurance Company and Mutual Life Insurance Company of New York), the

---

**1.** Plaintiffs' Complaint alleges simply that "MONY" is the liable party, without differentiating between the various MONY entities. As is clear from the discussion below, precisely which MONY entities Plaintiffs worked for, signed their arbitration agreement with, and were sanctioned by is of some dispute and bears on the outcome of the motion.

**2.** The corporate structure of the defendant companies is drawn from the declaration of Paul F. Bird, the director of investigations for the internal audit department of AXA Financial, Inc., the ultimate corporate parent at issue. *See* Doc. No. 8, Ex. K.

MONY Securities defendants (MONY Securities Corporation, The MONY Group, Inc., and MONY Brokerage, Inc.), and the AXA defendants (AXA Advisors, LLC, and AXA Financial, Inc.).

As to the MONY Life defendants, the Mutual Life Insurance Company of New York was demutualized in 1998 and no longer exists. Its successor company is MONY Life Insurance Company (MONY Life). MONY Life is the parent company of MONY Securities Corporation and MONY Brokerage, Inc., which were Plaintiffs' direct employers. Thus, MONY Life is the relevant defendant.

None of the MONY Securities defendants is presently at issue. MONY Securities Corporation and MONY Brokerage, Inc., were Plaintiffs' direct employers. The two entities were wholly-owned subsidiaries of both The MONY Group, Inc., a holding company that was dissolved July 8, 2004, and of MONY Life Insurance Company. Plaintiffs conceded that MONY Securities Corporation,[3] MONY Brokerage, Inc., and The MONY Group, Inc., could properly compel arbitration, and the Court has so ordered (doc. no. 17).

The AXA defendants are not independently relevant to the outcome of this motion. AXA Financial, Inc., is the ultimate corporate parent of the entities involved in this case. In 2004, it acquired MONY. AXA Advisers, LLC, is a subsidiary of AXA Financial, Inc. The claims against the AXA defendants are premised solely on successor liability. Whatever decision the Court reaches with respect to MONY Life (arbitration or not) will apply to the AXA defendants. See 1 Domke on Commercial Arbitration § 13:12 (2002) (noting that, as a general rule, a successor corporation has the same rights and responsibilities of its predecessor under an arbitration agreement).

All Defendants moved to compel arbitration (doc. no. 3). The Court granted the motion in part (doc. no. 17), ordering Plaintiffs to arbitrate the dispute with the MONY Securities defendants (which were members of the NASD) and ordering discovery to proceed while the Court took the arbitrability of the dispute with respect to the MONY Life and AXA defendants (which were not members of the NASD) under advisement.

On Defendants' interlocutory appeal, the Third Circuit ordered a stay of discovery, except for discovery necessary to determine arbitrability, until the Court decides the remaining Defendants' motion to compel arbitration (doc. no. 32).

On remand, the parties took limited discovery on the issue of arbitrability. They have submitted supplemental briefs on Defendants' motion to compel arbitration.[4]

**B.** *The Arbitration Agreement and the NASD Provisions*

Plaintiffs were independent contractors with both MONY Life and MONY Securities. In order to become registered representatives with MONY Securities, which

---

**3.** Note that MONY Securities Corporation ceased being a member of the NASD on March 3, 2006, after this action had commenced. Its cessation of its membership in the NASD has no bearing on the case.

**4.** There have been a plethora of responses and replies to the original motion to compel arbitration (doc. no. 3). Before the initial hearing on the motion on January 4, 2006, Plaintiffs responded to the motion (doc. nos. 5 & 6); Defendants replied (doc. no. 8); and Plaintiffs sur-replied (doc. no. 9). Per the Court's Order of August 4, 2006 (doc. no. 43), Plaintiffs submitted a supplemental response to the motion to compel (doc. no. 45) and Defendants replied (doc. no. 46). Then, Plaintiffs moved for leave to file a sur-response (doc. no. 47) and Defendants moved for leave to file a sur-reply (doc. no. 48).

was a necessary step in allowing them to offer insurance securities products for sale, Plaintiffs signed registered representative agreements with the NASD. In becoming registered representatives, Plaintiffs also signed Form U–4, which provides that disputes between the applicant and his firm will be arbitrated according the rules of the NASD.

### 1. *Form U–4*

Self-regulating organizations (SROs) operating in the securities and investment fields require member firms to compel certain employees and independent contractors to register with the SRO as a condition of employment. Relevant here, the NASD is one of the SROs that requires employees' registration. MONY Securities is a member firm of the NASD.

Registration with the SRO entails, inter alia, completing a Form U–4. The form is titled "uniform application for securities industry registration or transfer." The provision relevant here provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.[5]

The NASD is the organization indicated in item 10 of Plaintiffs' Form U–4s.

It is important to note the unique situation of Form U–4 in the universe of arbi-

tration agreements. In the typical situation, two parties enter into an agreement to arbitrate with each other any dispute that may arise. With the Form U–4, on the other hand, an employee enters into an agreement with the NASD to arbitrate with the employee's employer (the NASD member firm) any disputes that may arise. The employer, in turn, is obligated by virtue of its membership in the NASD to arbitrate disputes with its employees. The employee and employer do not execute their own arbitration agreement.

### 2. *NASD provisions*

Form U–4 explicitly refers to the NASD's rules, constitutions, or bylaws, as they may be amended.[6] Relevant here are the NASD's Bylaws and Manual, *available at* http://nasd.complinet.com/nasd/display/index.html.

Within the NASD Manual is the NASD Code of Arbitration Procedures (NASD Code), § 10000 *et seq.*, which governs the procedures for arbitration.

Specifically, NASD Code § 10101 defines the universe of "matters eligible for submission" for arbitration:

> [A]ny dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member . . .:
>
> (a) between or among members;

---

**5.** This is the language on the Form U–4 signed by Joseph Marciano on August 7, 1985, and by Michael Marciano on July 13, 1987. Joseph Marciano signed a second Form U–4 on March 12, 1996, which, in addition to the above-quoted language, included the following: "and that any arbitration award rendered against me may be entered as a Judgment in any court of competent jurisdiction."

**6.** The version of the NASD's rules applicable to this case are those in force on July 8, 2005, the date Plaintiffs filed suit in state court. Relatedly, the Third Circuit has held that by singing the Form U–4, a registrant obligates himself to comply with amendments to the NASD's rules. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 187 (3d Cir.1998).

**524**

(b) between or among members and associated persons; [or]

(c) between or among members or associated persons and public customers, or others....

NASD Code § 10101.

Section 10201(a), in turn, limits the universe of eligible matters to those "required [for] submission":

[A] dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among *members* and/or *associated persons,* and/or *certain others,* arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

NASD Code § 10201(a) (emphasis added).

The parties dispute whether MONY Life is an "associated person" [7] and/or "certain other" under the meaning of this section. The NASD Manual explicitly incorporates the definitions provided in the NASD By-laws. NASD Manual § 121. The Bylaws define an "associated person" as:

(1) a natural person who is registered or has applied for registration under the Rules of the Association; [or] (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar sta-

tus or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By–Laws or the Rules of the Association....

NASD Bylaws Art. I(cc). Unfortunately, the term "certain other" is nowhere defined by the NASD.

## III. DISCUSSION

### A. *Law*

#### 1. *Federal law applies*

 At the outset, note that the Court is sitting in diversity, *see* Doc. No. 12 (denying Plaintiffs' motion to remand), and therefore would ordinarily apply state substantive law, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the Federal Arbitration Act (FAA) requires the Court to apply federal substantive law here because the arbitration agreement is connected to a transaction involving interstate commerce. *State Farm Mut. Auto. Ins. Co. v. Coviello,* 233 F.3d 710, 713 n. 1 (3d Cir. 2000); *see also* 13B Wright & Miller, *Federal Practice and Procedure* § 3569, at 173 (1984) ("[I]n a diversity suit ..., the substantive rules contained in the [Federal Arbitration] Act, based as it is on the commerce and admiralty powers, are to be applied regardless of state law.").

Whether the arbitration agreement is connected to a transaction involving interstate commerce is a factual determination that must be made by the Court. *State Farm,* 233 F.3d at 713 n. 1. Here, Plain-

7. Regrettably, the NASD Code uses the terms "associated person" and "person associated with a member" interchangeably.

tiffs, Pennsylvania residents, were employees of MONY Securities, a New York corporation with its principal place of business in New York.[8] Plaintiffs executed the Form U–4 with the NASD, which operates under the oversight of the federal Securities and Exchange Commission. *See Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 61 (2d Cir.1996). Therefore, Form U–4's arbitration agreement is connected to interstate commerce. Although the Court is sitting in diversity, it will apply the federal substantive law that has emerged from interpretation of the FAA.[9]

### 2. The legal standard under the Federal Arbitration Act

■ Under the FAA, on the motion of a party, a court must stay proceedings and order the parties to arbitrate the dispute if the court finds that the parties have agreed in writing to do so. 9 U.S.C. §§ 3, 4, 6. "[T]he Act leaves no place for the exercise of discretion by a district court...." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

■ A party seeking to compel arbitration must show (1) that a valid agreement to arbitrate exists between the parties and (2) that the specific dispute falls within the scope of the agreement.[10] *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir.2005); *PaineWebber,* 921 F.2d at 511.

In determining whether a valid agreement to arbitrate exists between the parties,[11] the Third Circuit has instructed district courts to give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise," or, in other words, to apply the familiar Federal Rule of Civil Procedure 56(c) summary judgment standard. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 & n. 9 (3d Cir.1980); *see also Berkery v. Cross Country Bank,* 256 F.Supp.2d 359, 364 n. 3 (E.D.Pa.2003) (Robreno, J.) (applying the summary judgment standard to a motion to compel arbitration).

■ While there is a presumption that a particular dispute is within the *scope* of an arbitration agreement, *Volt*

---

8. According to Defendants, all MONY and AXA defendants have their principal places of business in New York, and they are all incorporated in either New York or Delaware. (Doc. No. 1, at 2.)

9. Nevertheless, the analysis is the same under both federal and Pennsylvania law. *See State Farm,* 233 F.3d at 713 n. 1 ("[T]here is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause."); *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 510 n. 3 (3d Cir.1990) ("[T]he federal Arbitration Act and the Pennsylvania Uniform Arbitration Act, and the case law that has developed under each, are functionally equivalent as regards the authority of a district court to review an agreement to arbitrate and to stay or compel arbitration."), *overruled on other grounds by Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

10. The Court is to look to the same two factors under Pennsylvania law: "whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision." *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184, 185 (1975).

11. There are five traditional theories under which a signatory can bind a non-signatory to an arbitration agreement: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Trippe,* 401 F.3d at 532. However, Defendants have not argued that these five theories, or one of them, can be used by a non-signatory to force a signatory to arbitrate. In addition, the Third Circuit has not applied these theories in a securities setting. Therefore, the Court finds that these five theories are inapplicable here.

*Info. Scis., Inc. v. Bd. of Trustees,* 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), there is no such "presumption" or "policy" that favors the *existence* of a valid agreement to arbitrate. On the contrary, "[t]he federal policy [favoring arbitration] does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear." *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994); *see also Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002) ("[The] federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.").[12]

**12.** In this area of jurisprudence, language to the effect of "there is a presumption in favor of arbitration" has been a source of confusion. *Compare Par–Knit,* 636 F.2d at 54 (directing that all reasonable inferences be drawn in favor of the party opposing arbitration), *with Trippe,* 401 F.3d at 532 ("When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability."). It now appears that there are two lessons from this so-called "presumption."

One, the presumption applies only to the *scope* of an open-ended arbitration agreement, never to the *existence* of such an agreement or to the *identity* the parties who might be bound by such an agreement. If *A* and *B* have an agreement to arbitrate any dispute that arises between them, there is a presumption that, if a dispute arises between them, the dispute is within the scope of the agreement. However, if a dispute arises between *A* and *C*, even if *B* and *C* are closely related, there is no "presumption" that A has agreed to arbitrate its dispute with *C*.

Two, the "presumption" is not an evidentiary burden in a formal sense, but rather more of a policy statement. Prior to 1925, based on the English common law tradition, judicial enforcement of arbitration agreements was disfavored. Congress enacted the FAA in 1925 in order "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–20, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements"). To this extent, it is the policy of the United States to favor arbitration.

In this case, the Court will not apply the so-called presumption favoring arbitrability because this motion hinges on whether these parties have agreed to arbitrate their claims, not on whether the dispute is within the scope of the arbitration agreement. *See E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.... It goes without saying that a contract cannot bind a nonparty."); *Cone,* 460 U.S. at 24–25, 103 S.Ct. 927 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration ...." (emphasis added)).

The Third Circuit's opinion in *In re Prudential Insurance Co. of America Sales Practice Litigation,* 133 F.3d 225 (3d Cir.1998), is not to the contrary. As noted in Section III. B.1.c.(iv), *infra,* the *Prudential* court discussed the purpose of Form U–4 specifically and the utility of arbitration as a method of dispute resolution in the securities industry generally. 133 F.3d at 229–30. The securities industry is heavily-regulated, the parties operating in the industry are particularly sophisticated, and arbitration is widely accepted and is the almost-exclusive means of dispute resolution among and between actors in the industry. Arbitration agreements in the securities industry are almost sui generis.

As the *Prudential* court stated, by executing Form U–4, a party evidences her intent to arbitrate a dispute with a wide range of other parties. *Id.* at 230. These other parties may be termed beneficiaries to the contract. As discussed above, Section II.B.1, *supra,* in the securities industry, an employee and employer are required to arbitrate their dispute by virtue of their registration with (for the employee) and membership in (for the employer) the NASD, even though the employee and employer do not execute an independent arbitration agreement.

## B. *Analysis*

The Court must interpret the relevant provisions of Form U–4 and the NASD Code to determine whether MONY Life can compel arbitration against the Marcianos. This involves placing the parties in the proper nomenclature of the NASD in order to determine their respective rights and obligations.

First, the Court determines the proper placement of each party under the definitions provided by the NASD Code. The Marcianos are "associated persons" and MONY Life is a "certain other." MONY Life is not an "associated person."

Second, the Court explains the powers of each party under the NASD Code and Form U–4. A "certain other" cannot compel arbitration under the NASD Code. A "certain other" can, however, compel arbitration against an "associated person" under Form U–4.

Third, the Court draws the preceding analyses together to conclude that MONY Life can compel the Marcianos to arbitrate the dispute. Although MONY Life cannot compel arbitration under the NASD Code, it can compel arbitration under Form U–4.

Finally, even under an alternate reading of the NASD Code, MONY Life (a "certain other") is nonetheless able to join an arbitration initiated by MONY Securities (an NASD member) against the Marcianos ("associated persons").

### 1. *Each party's definition under the NASD Code*

a. *The Marcianos are "associated persons" under the NASD Code.*

■ The NASD Bylaws define an "associated person" as, inter alia, "a natural person who is registered or has applied for registration under the Rules of the Association." NASD By–Laws Art. I(cc). The Marcianos are natural persons. They were registered under the rules of the NASD. Therefore, they are "associated persons" within the meaning of the NASD Code.

### b. *MONY Life is not an "associated person" under the NASD Code.*

■ The NASD Bylaws define an "associated person" as a natural person. And the NASD Manual explicitly adopts the definitions contained in the NASD Bylaws. NASD Manual § 121. Therefore, as a non-natural entity, MONY Life does not qualify as an "associated person." *See Tays v. Covenant Life Ins. Co.,* 964 F.2d 501, 503 (5th Cir.1992) ("[T]he definition of associated person in the NASD by-laws seems calculated to exclude corporate entities...."); *Mehling v. N.Y. Life Ins. Co.,* 163 F.Supp.2d 502, 511 (E.D.Pa.2001) (Kauffman, J.) ("[T]he term 'person' covers only natural persons, and not corporate entities."). Indeed, the First Circuit arrived at the same conclusion in a case similar to the one at bar. Dealing with an "intricate corporate hierarchy," the court concluded that a non-NASD member, even though it was a parent corporation of the NASD member that was the employees' direct employer, was not an "associated person" within the meaning of the NASD Code. *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer,* 226 F.3d 15, 19–22 (1st Cir.2000).[13]

MONY Life incorrectly relies on *In re Prudential Insurance Co. of America*

---

**13.** One difference between *Paul Revere* and the case at bar is significant. In *Paul Revere,* the plaintiffs, in an effort to avoid arbitration, voluntarily dismissed their direct employer (the NASD member) from the case. 226 F.3d at 18. Here, not only have Plaintiffs not dismissed their direct employer, MONY Securities (the NASD member), from the case, they have already agreed to arbitrate their claims against it.

*Sales Practice Litigation*, 133 F.3d 225 (3d Cir.1998), for the proposition that MONY Life is an "associated person." The *Prudential* court held that the plaintiff *employees* were "associated persons" under the NASD Code. *Id.* at 230 n. 7. It also held that Prudential, the corporate parent of the employees' direct employer, could compel arbitration *because it was itself a member of NASD. Id.* at 229. It did not hold that Prudential, the entity at issue, was an "associated person." [14]

MONY Life's reliance on *McMahan Securities Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82 (2d Cir.1994), is also unavailing. In *McMahan*, the Second Circuit did hold that entities are included in the NASD definition of "associated persons." *Id.* at 87. It arrived at this decision by examining the NASD Bylaws definition of "associated person" and looking to the expansive definition of "person" in both the NASD Rules of Fair Practice (a set of rules separate from the NASD Code) and the Securities and Exchange Act. *Id.* At the time, the Bylaws definition referred to *"every* sole proprietor, partner, officer, director, or branch manager of any member, or any natural person...." *Id.* (citing NASD Manual ¶ 1101(m) (1994) (emphasis in *McMahan*)).

However, the Second Circuit implicitly overruled *McMahan* on this point when it decided in *Burns v. New York Life Insurance Co.*, 202 F.3d 616, 620 (2d Cir. 2000) (per curiam), that the NASD's definition of "associated person" "exclude[s]

corporate entities." Moreover, the NASD amended the definition in 1999 to make clear its intention that "associated person" refers only to natural persons. *See* NASD, *NASD Announces Changes to the By–Laws Associated Person Definition* (99–95), *available at* http://nasd.complinet. com/nasd/display/display.html?rbid=1189 & element_id=1159002037 ("[T]he amendments insert the word 'other' into subsection 2 of the definition of 'person associated with a member' to clarify that the subsection describes only natural persons."). "This new definition leaves no ambiguity that the NASD intended to confine its definition of 'associated persons' [to natural persons]." *Sands Bros. & Co., Ltd. v. Nasser*, 2004 WL 26550, at *4 n. 6 (S.D.N.Y. Jan.5, 2004).

Therefore, MONY Life, as a corporate entity, is not an "associated person" under the NASD Code.

### c. *MONY Life is a "certain other" under the NASD Code.*

The crux of the motion to compel arbitration is whether MONY Life is a "certain other" under the NASD Code. Unfortunately, unlike "associated person," the NASD nowhere defines "certain other." Courts are left to fill in the gaps as to what the NASD meant when it enacted a rule that required arbitration between, inter alia, "associated persons" and "certain others." *See* NASD Code § 10201(a).

---

**14.** MONY Life also states that in *Prudential,* "the Third Circuit applied the definition of an associated person under the Securities Exchange Act to determine the entities that may constitute an 'associated person' under the NASD rule." (Doc. No. 46, at 11.) Again, this is wrong. The court held that the *plaintiff employee* "would certainly be an 'associated person' for purposes of the Securities Exchange Act, which uses similar language as the NASD's definition and provides the statu-

tory basis for the NASD." *Id.* at 230 n. 7. The court never mentioned that Prudential would be an "associated person" under the Securities Exchange Act definition. Moreover, the First Circuit explicitly rejected such an argument in *Paul Revere,* holding that the NASD definition of "associated person," not the Securities Exchange Act definition, was controlling in a situation such as the one at bar, and that the NASD definition applies only to natural persons. 226 F.3d at 21.

■ The Court concludes that the proper focus in determining whether a party is a "certain other" is the sufficiency of a party's immersion in the underlying dispute. This conclusion is reached by examining the Second Circuit's decision in *McMahan* and the cases interpreting *McMahan.* In addition, the conclusion is validated by a textual analysis of the NASD Code, including application of the statutory construction principle of *ejusdem generis,* and is consistent with the Third Circuit's teachings in *Prudential.*

#### (i) *The proper* McMahan *"test"*

MONY Life insists that it is a "certain other" under the definition provided by the Second Circuit in *McMahan.* Plaintiffs argue, based on the same *McMahan* language, that MONY Life is *not* a "certain other." [15]

Both sides recognize that most courts that have been faced with interpreting "certain others" have looked to the following discussion in *McMahan:*

> [The non-signatory, non-NASD member], though not a partner of any member, is sufficiently immersed in the underlying controversy for it to be considered a "certain other" party under

[the NASD Code]. A person who is neither a member nor an associated person is nevertheless appropriately joined in the arbitration where [1] that party plays an active role in the securities industry, [2] is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to. the arbitration), and [3] has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration.

35 F.3d at 87–88 (alterations omitted) (numerals added for clarification). [16]

At the outset, there is an incongruity between the "sufficient immersion" language from *McMahan's* first sentence and the three related factors announced in its second sentence. Of the three factors, only the third (whether the party has "voluntarily participated in the particular events giving rise to the controversy underlying the arbitration") deals with the underlying dispute and is thus related to the "sufficient immersion" language. The first two factors deal with the party's role in the securities industry: how active it is in the industry and whether it has signed a securities-related arbitration agreement (or is the instrument of a party that has done so).

---

**15.** Plaintiffs also assert that *McMahan* is not good law on this point because the "certain other" language on which the *McMahan* court based its decision has been removed from the NASD Code. (Doc. No. 6, at 6 n. 4.) Plaintiffs are simply incorrect: NASD Code § 10201(a) is materially the same as it was when *McMahan* was decided.

The basis for the confusion seems to be that two federal district courts had "noted" that the "certain others" language was removed in subsequent amendments to the NASD Code. *See Sands Bros.,* 2004 WL 26550, at *4; *World Financial Group, Inc. v. Steele,* 2002 WL 31045354, at *3 (S.D.Ind. Aug.15, 2002). These courts used the supposed Code amendments as the basis for holding that *McMahan's* language about "certain others" who

could compel arbitration was no longer good law. In fact, the language of the Code is still materially the same as it was at the time *McMahan* was decided. *See Westminster Fin. Cos. v. Briarcliff Capital Corp.,* 156 Ohio App.3d 266, 805 N.E.2d 191, 200 (2004) ("[W]e find no legal basis for the conclusions reached in *World Financial Group* and *Sands Bros* ").

**16.** Although *McMahan* was decided by the Second Circuit, a court well respected for its jurisprudence in securities industry matters, this Court is not bound by the its decision. The Court will look to relevant authority, *McMahan* included, to determine if MONY Life is a "certain other" under the NASD Code.

Moreover, the analytical underpinnings of the two *McMahan* sentences are also slightly different. "Sufficient immersion," in the first sentence, applies when all parties were involved in the events giving rise to the dispute. A party that is not strictly an "associated person" or "member" under the NASD Code could qualify as a "certain other" if it is sufficiently involved in the dispute giving rise to the litigation (or arbitration). Thus, if there is one common set of facts applicable to all parties, then, in the interest of efficiency, these facts should be heard by one adjudicative body.

On the other hand, the "instrument" language from the second factor applies when a parent corporation was not involved with the events giving rise to the dispute, but rather is only involved in the dispute through the actions of its subsidiary.[17] Thus, it makes little sense to adjudicate the dispute against the parent and the subsidiary separately, because (1) there is still only one set of common facts, (2) the parent has no independent knowledge of the events giving rise to the dispute, and (3) the parent is the party ultimately responsible for the outcome.

■ Under these circumstances, Plaintiffs seek to frame *McMahan* into a three-pronged conjunctive test, which requires satisfaction of all three prongs before a party may qualify as a "certain other" under the Code. (Doc. No. 6, at 6.) Arguing that MONY Life does not meet all three prongs (Plaintiffs concede the third "prong"—voluntary participation in the events giving rise to the dispute—is met),

Plaintiffs conclude that MONY Life is not a "certain other."

Defendants, alternatively, see the language from *McMahan* as an amorphous whole. (Doc. No. 8, at 7.) Under Defendants' construction, the prongs merely inform the application of definition of "sufficient immersion" in the first sentence. Thus, Defendants encourage the Court to look at the totality of the circumstances and the *McMahan* court's intent to find that MONY Life is a "certain other."

Viewed in this crucible, the Court must decide whether the three factors listed in the second sentence of *McMahan* inform the "sufficient immersion" test from the first sentence, or, rather, whether the three factors constitute the test in and of themselves.

The authorities are split and the Third Circuit has not addressed the issue. Some courts look solely to the three factors. *See, e.g., Variable Annuity Life Ins. Co. v. Joiner,* 2006 WL 1737443, at *3 (S.D.Ga. June 23, 2006); *Pruco Sec. Corp. v. Montgomery,* 2003 WL 22383034, at *4 (D.N.D. Oct.15, 2003); *Basil Inv. Corp. v. Hampshire Funding, Inc.,* 1998 WL 88399, at *4 (E.D.Pa. Feb.19, 1998) (Reed, J.) (finding "the reasoning of *McMahan* to be persuasive," adopting *McMahan's* three-part "test," and holding that the entity in question was a "certain other" under the Code). Other courts look solely to the "sufficient immersion" language. *See, e.g., Parrott v. Pasadena Capital Corp.,* 1998 WL 91076, at *4 (S.D.N.Y. Mar.3, 1998). Still other

---

17. Plaintiffs seize on the word "instrument" from the second factor and use its common sense definition to find that while a subsidiary can be an instrument of a parent or an employee an instrument of an entity, a parent corporation can never be an instrument of a subsidiary corporation, (Doc. No. 45, at 7–9.), and they cite *Phoenix Cos. v. Abrahamsen,* 2006 WL 2847812 (S.D.N.Y. Sept.28, 2006),

for support. It is undisputed that MONY Securities is the instrument of MONY Life, not vice versa.

However, Plaintiffs have failed to articulate why "certain others" should be limited to instruments of members, instead of defining "certain others" as parts of members' corporate family or "affiliated companies."

courts look to both. *See, e.g., Gates v. Veravest Invs., Inc.,* 2004 WL 1173145, at *7–8 (D.Or. May 25, 2004); *Heller v. MC Fin. Servs. Ltd.,* 1998 WL 190288, at *3 (S.D.N.Y. Apr.21, 1998). However, Plaintiffs have not pointed to any case in which a court has explicitly treated *McMahan* as a conjunctive three-part test.

Defendants' construction supplies a reasonable explanation that gives full play to the entire thrust of the *McMahan* court's opinion. On the other hand, Plaintiffs' construction, by focusing exclusively on the three factors from McMahan, would read out of *McMahan's* definition of "certain other" the requirement that a party be "sufficient immersed" in the underlying dispute.

Therefore, the Court will treat *McMahan's* "sufficient immersion" language as the operative "test," and the three factors listed by the *McMahan* court will serve to inform the "sufficient immersion" test.

#### (ii) McMahan's "sufficient immersion" test

The Court must now endeavor to apply *McMahan's* "sufficient immersion" language. Courts have held that a party is a "certain other" when claims against it and a related entity are intertwined or interrelated. For instance, in *Parrott,* because the dispute arose from one set of events, the claims against the non-signatory defendants were "inextricably intertwined" with the claims against the signatory defendant.[18] 1998 WL 91076, at *4. And in *Paul Revere Variable Annuity Insurance Co. v. Thomas,* the court looked to *Parrott* (but not *McMahan* ) for guidance on when claims are "inextricably intertwined." 66 F.Supp.2d 217, 225 (D.Mass.1999), *aff'd sub nom., Paul Revere Variable Annuity*

*Insurance Co. v. Kirschhofer,* 226 F.3d 15 (1st Cir.2000). The court stated:

> Because [the plaintiffs'] claims against [the signatory defendant] and the other [non-signatory defendants] are based on [one] contract, they are all governed by the same set of facts and implicate the same legal arguments. Moreover, it is evident that the [signatory defendant and non-signatory defendants] are all closely affiliated with each other despite being organized as separate entities.

*Id.; see also Myrick v. GTE Main Street Inc.,* 73 F.Supp.2d 94, 97 (D.Mass.1999) (finding non-signatory defendants to be "certain others" because the claims against them and the signatory defendants were "inextricably related").

Therefore, the Court will look to the sufficiency of MONY Life's immersion in the underlying dispute, the analysis of which is informed by the degree of interrelatedness of the claims against MONY Life and MONY Securities.

#### (iii) A textual analysis of the NASD provision

The Court's judgment is also informed by an examination of the text of the provision at issue. If the NASD had intended for arbitration to be mandatory only when it was between or among members and "associated persons," it would not have included "certain others" at the end of the list. The NASD's use of the term "certain others" must, then, serve some purpose. The term likely refers to parties who, while not strictly members or "associated persons," nonetheless are so similar to members or "associated persons" that it makes sense to include them in an arbitration. On the other hand, the Court must

---

**18.** In *Parrott,* the signatory defendant and the non-signatory defendants were only "affiliated entities," a weaker relationship than the parent-subsidiary relationship at issue here. *Id.*

be mindful not to define "certain others" too expansively, lest "certain others" be read as "all others."

■ To this end, by analogy, applying the logic of the statutory construction principle of *ejusdem generis* is useful. "Under the principle of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n,* 499 U.S. 117, 129, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991). For instance, in *Circuit City Stores, Inc. v. Adams,* the Supreme Court held that the phrase "other class of workers" in the FAA clause "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" should be limited to transportation workers. 532 U.S. 105, 114, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). And in *Farrand v. Lutheran Bhd.,* the Seventh Circuit, interpreting a different section of the NASD Code, held that the phrase "or others" in the clause "between or among members and public customers, or others" probably meant clients who for some reason were not technically customers. 993 F.2d 1253, 1254–55 (7th Cir.1993); *see also MP III Holdings v. Hartford Cas. Ins. Co.,* 2005 WL 1320127, at *4 (E.D.Pa. May 31, 2005) (Shapiro, J.) (interpreting "or other paper" in 28 U.S.C. § 1446(b)'s "copy of an amended pleading, motion, order or other paper" to include only court-filed documents).

■ Therefore, "certain others" in § 10201(a) likely refers to parties similar to "associated persons" or members, though not strictly so, whose presence in an NASD arbitration would benefit all parties involved.

*(iv) The Third Circuit's guidance in Prudential*

■ The Third Circuit, while not speaking directly to the definition of "certain other," has also counseled that the Form U–4 arbitration provision and the NASD Code of Arbitration should be read expansively to include parties not explicitly listed therein:

> [W]e do not find Prudential [the corporate parent] is without standing here simply because it is not a signatory to the arbitration argument; nor will we deny standing because Pruco [the direct employer] is listed as the only "firm" referenced in Form U–4. Instead, we turn to the text of the Form U–4 arbitration agreement to see if there is an express and unequivocal intent that the plaintiffs would arbitrate their claims against, inter alia, Prudential, and whether both parties to the contract express an intention to benefit the third party in the contract itself.
>
> . . . .
>
> . . . [T]he arbitration agreement and the NASD Code of Arbitration establish certain classes of individuals—member firms of the NASD, customers, and so on—who would benefit from the applicant's agreement with the NASD. . . . A holding that would restrict the right of these third parties to invoke arbitration because they had not signed Form U–4 would essentially require the NASD and the applicants to seek explicit textual recognition of all intended beneficiaries, whether known or unknown. We think such a requirement would frustrate the purpose and text of Form U–4. . . .

133 F.3d at 229–30. The court ultimately held that Prudential (the non-signatory corporate parent) could properly compel arbitration under the NASD Code because

it was itself an NASD member firm.[19] *Id.* at 230. Although the *Prudential* court never explicitly discussed the term "certain other" in the NASD Code, the court's discussion of the entities and persons contemplated in the Form U–4 and the NASD Code is nevertheless instructive in interpreting "certain others": courts are to give expansive scope[20] to the identity of parties that are intended beneficiaries of the arbitration agreement.

### (v) Application of the "sufficient immersion" test to the situation at bar

■ With these teachings *(McMahan,* the text of the NASD provision and the principle of *ejusdem generis,* and *Prudential* ) in mind, the Court turns to the facts of this dispute. The second and third *McMahan* "factors" are not in dispute: Defendants have put forth no evidence or argument that MONY Life is a signatory to a securities-industry arbitration agreement (factor 2), and Plaintiffs have conceded that MONY Life voluntarily participated in the events giving rise to the dispute (factor 3). The first *McMahan* "factor"—the extent of MONY Life's role in the securities industry—though disputed,[21] is not controlling.

The real question is whether MONY Life is "sufficiently immersed" in the underlying dispute, including whether the claims against MONY Life are inextricably intertwined with the claims against MONY Securities.

Each of the seven counts in the complaint prays for relief against all defendants, jointly and severally. The Complaint groups "MONY Life Insurance Company, Mutual Life Insurance Company of New York, MONY Securities Corp., The MONY Group, Inc., and MONY Brokerage, Inc." together as "MONY." Compl. ¶ 2(e). In short, in the Complaint, Plaintiffs do not distinguish between the actions taken by each Defendant, nor do they allege there was any independent action by MONY Life.[22] It appears that Plaintiffs believed they worked for "MONY" and, believing they had been wronged by "their employer," instituted this action against all MONY entities, without regard for which entities might specifically have been responsible for the alleged wrongdoing.

According to Robert Wright, senior vice president of MONY Life (before its merger with AXA), MONY Life acted as the corporate parent of MONY Securities, sharing the corporate functions of, inter alia, a law department, compliance department, and human resources department. (Deposition of Robert Wright at 12–14, 49, 72–73, Doc. No. 45 ex. B.) MONY Life and MONY Securities acted in concert; the actions of each are indistinguishable.

Indeed, the extent of the interrelatedness and immersion in the underlying dispute is best phrased by Plaintiffs themselves: "MONY Securities Corp., the entity registered as a member with the NASD as a broker dealer, was nothing more than a pawn of MONY Life Insur-

---

19. Therefore, the above-quoted language is dicta.

20. See note 12, *supra,* for a discussion of the concept of a "presumption" of arbitrability.

21. Plaintiffs claim that MONY Life does not manufacture securities, (Doc. No. 45, at 6); Defendants counter that it does. (Doc. No. 46, at 3–4.)

22. In their sur-reply to Defendants' motion to compel arbitration, Plaintiffs belatedly assert that MONY Life "committed direct acts which have independently given rise to liability on the part of the Life Insurance defendants," and that MONY Life was Plaintiffs' "only statutory employer." (Doc. No. 9, at 6.) Plaintiffs do not, however, assert independent action by MONY Life in the Complaint.

ance Company during the investigation and sanctioning of Plaintiffs." (Doc. No. 45, at 2.)

Therefore, MONY Life qualifies as a "certain other" under the NASD Code.

### 2. Each party's powers and responsibilities under the NASD Code and Form U-4

### a. A "certain other" cannot compel arbitration under the NASD Code.

There are three plausible ways to read NASD Code § 10201(a),[23] which is titled "required submission."[24] One is to say that arbitration is required only when instituted by one of the parties specified in subdivisions (1) through (3). To read the provision this way would make the parties specified in the opening paragraph (members, "associated persons," and "certain others") surplusage. Indeed, matters between "associated persons" (or members) and "certain others" would never be required to be arbitrated because "certain others" are not listed as parties within the four specified scenarios in subdivisions (1) through (3).

The second way to read the section is to break it in two, reading the language until "under this Code" as one part and the language beginning "at the instance of" as the second part. The opening paragraph would then list the matters required to be arbitrated: between or among members and/or "associated persons" and/or "certain others." The second part would provide the parties that could institute or compel arbitration under the Code: members against member; member against "associated person"; "associated person" against member; and "associated person" against "associated person." Thus, under this reading, a "certain other" cannot compel arbitration under the Code, but a dispute between an "associated person" or member and a "certain other" is nonetheless still "required" to be arbitrated. This reading of the provision would eliminate any surplusage. *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 489 n. 13, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) ("It is ... a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal citations and quotations marks omitted)); *United States v. Johnson*, 462 F.2d 423, 428 (3d Cir.1972) ("[I]t is a general rule of statutory construction that words in statutes should not be construed as excess verbiage."). The latter reading of the Code is more appropriate.

Section 10201(a) evidences the NASD's intent that disputes between or among members, "associated persons," and "certain others" should be arbitrated. However, the NASD recognized that it lacks jurisdiction over "certain others," who, by

**23.** Section 10201(a) of the NASD Code provides:

> [A] dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s)

> with such member, shall be arbitrated under this Code, at the instance of:
> (1) a member against another member;
> (2) a member against a person associated with a member or a person associated with a member against a member; and
> (3) a person associated with a member against a person associated with a member.

**24.** Two readings are provided here; the third, an alternate reading, is provided in note 26, *infra*.

their definition, have no relationship or agreement with the NASD. Thus, the NASD cannot compel a "certain other" to arbitrate, nor can a "certain other" rely on the NASD Code to compel a member or "associated person" to arbitrate. This why the NASD did not include "certain other" in the four scenarios in which a party can compel arbitration. However, although it lacks power over "certain others," it nonetheless expressed its intent in the opening paragraph of § 10201(a) that "certain others" should be part of certain arbitrations.

Thus, the Court reads § 10201(a) to say (1) that disputes between or among members and/or "associated persons" and/or "certain others" are required to be arbitrated under the Code and (2) that (i) a member can compel arbitration against another member, (ii) a member can compel arbitration against an "associated person," (iii) an "associated person" can compel arbitration against a member, and (iv) an "associated person" can compel arbitration against an "associated person."

■ Looking to the final phrase of the main paragraph, only members or "associated persons" may "insist" [25] on arbitration under the Code. Notably missing from subsections (1), (2), and (3) is the term "certain others," which appears only at the beginning of the main paragraph. As the Second Circuit has held, " 'certain others' are not authorized to compel arbitration under the NASD Code." *Burns,* 202 F.3d at 622.

Therefore, "certain others" cannot compel arbitration under the Code.

*b. A "certain other" can compel arbitration against an "associated person" under Form U–4.*

■ NASD Code § 10201(a) is relevant not just for listing which parties may compel arbitration, but also for stating the instances when a dispute "shall be arbitrated." According to § 10201(a), a "dispute ... between ... associated persons [and] certain others ... shall be arbitrated under this Code." The mandatory "shall" means that disputes between "associated persons" and "certain others" are required to be arbitrated under the Code. In their Form U–4s, Plaintiffs agreed to arbitrate any dispute "that may arise between me and ... any other person, that is required to be arbitrated under the rules" of the NASD.

The Court is confronted with whether the term "person" in the Form U–4 means only natural persons, as it does in the NASD Code, or includes entities, as it does in the Securities Exchange Act, 15 U.S.C. § 78c(a)(9); *see S.E.C. v. J.W. Barclay & Co.,* 442 F.3d 834, 842 (3d Cir.2006). As noted above, Form U–4 is used by numerous SROs, not just the NASD, and is standard in the industry. Moreover, the form is otherwise expansive. Therefore, the definition of "person" in the Securities Exchange Act is controlling for the meaning of "person" in the Form U–4. The definition of "person" includes non-natural entities.

Form U–4 obligates signatories to arbitrate any dispute between themselves and any other person (or entity) that is required to be arbitrated under the NASD Code. Disputes between "associated persons" and "certain others" are required to be arbitrated under the Code. Therefore, a

---

**25.** The NASD Code uses the word "instance," which is defined by Black's Law Dictionary as "urgent solicitation or insistence." *Black's Law Dictionary* 800 (7th ed.1999). The Delaware Court of Chancery, interpreting the same NASD Code section, interpreted "instance" to mean "at the suggestion or instigation of." *Cantor Fitzgerald, L.P. v. Prebon Sec. (USA) Inc.,* 731 A.2d 823, 827 (Del.Ch. 1999).

"certain other" can compel arbitration under the Form U–4.

### 3. *Application*

#### a. *MONY Life (a "certain other") cannot compel arbitration under the NASD Code.*

According to the terms of § 10201(a) and its interpretation here, only "associated persons" and NASD members can compel arbitration under the Code, and then only in certain situations. MONY Life is neither a member nor an "associated person." (It is a "certain other.") Therefore, MONY Life cannot compel arbitration under the Code.

#### b. *MONY Life (a "certain other") can compel arbitration against the Marcianos ("associated persons") under Form U–4.*

■ Plaintiffs are "associated persons" under the NASD Code. MONY Life is a "certain other" under the NASD Code. Disputes between "associated persons" and "certain others" are required to be arbitrated under the NASD Code. In the Form U–4, Plaintiffs agreed to arbitrate any dispute between themselves and others that is required to be arbitrated under the NASD Code.

Therefore, Plaintiffs, upon executing the Form U–4, agreed to arbitrate their dispute against MONY Life. On the basis of this agreement, MONY Life can compel Plaintiffs to proceed to arbitration.[26]

---

**26.** Some courts have read NASD Code § 10201(a) as permitting a "certain other" to join an arbitration demanded by a member and/or "associated person." As noted in Section III.B.2.a., *supra*, although a "certain other" can never compel arbitration—or be compelled to arbitrate—under the Code, disputes "between or among members and/or associated persons, and/or *certain others*" are nonetheless "required" to be arbitrated. NASD Code § 10201(a) (emphasis added).

Under this interpretation, the NASD included "certain others" to indicate that, while "certain others" may not *compel* arbitration under the Code, they are nevertheless entitled to *join* a properly initiated arbitration. *See Burns*, 202 F.3d at 621 ("One who is a 'certain other' may participate in a NASD arbitration, but is not a party who can compel arbitration under the NASD Code."); *McMahan*, 35 F.3d at 87–88 (stating that a "certain other" can be "appropriately joined in the arbitration"); *Flynn v. Greenwich Global*, 32 Conn. L. Rptr. 397, 2002 WL 1573422, at *4 (Conn.Super.Ct. June 19, 2002) ("The reference to 'certain others' as potential parties in Rule 10201 was intended to allow for joinder in the arbitration if there were nonmembers involved in a dispute between 'members' and ['associated persons']." (citing *Burns*, 202 F.3d at 621–22)). In *Farrand*, when the Seventh Circuit was faced with interpreting "or others" in a different section of the NASD Code, it commented that "[p]erhaps the term ['others'] establishes a form of pendent party jurisdiction: 'others' may be added to the

arbitration of a dispute between a member and a public customer." 993 F.2d at 1255.

Applying this construction of § 10201(a) here, MONY Securities, an NASD member, has properly initiated an NASD arbitration against the Marcianos, "associated persons," under the NASD Code. MONY Life, as a "certain other," while not strictly able to *compel* arbitration under the Code, might nonetheless still be entitled to *participate* in a properly initiated arbitration. On this alternative basis, the Court could compel the Marcianos to submit their dispute against MONY Life to the NASD arbitration.

This reading of the Code, while plausible, is not entirely convincing. In the section on matters *eligible* for arbitration, the NASD included disputes "between or among members or associated persons and public customers, or *others*." NASD Code § 10101(c). So the Code already provides a mechanism whereby "others" are permitted to arbitrate disputes with members and/or "associated persons." To read § 10201(a) to say that "certain others" (a more limited class than "others") are permitted to join an arbitration would thus be redundant.

In addition, if the NASD had intended for "certain others" to merely be able to *join* arbitrations between or among members and "associated persons," it probably would not have written § 10201(a) to say that disputes between "members and/or associated persons and/or certain others" are *required* to arbitrated.

## IV. CONCLUSION

Plaintiffs are ordered to submit to an NASD arbitration with all Defendants. The proceedings in this Court are stayed pending the outcome of the arbitration.[27]

An appropriate order follows.

### ORDER

**AND NOW**, this **22nd** day of **January 2007**, following a hearing on the record on January 16, 2007, it is hereby **ORDERED** that Defendant's motion to compel arbitration (doc. no. 3) is **GRANTED** for the reasons stated in the accompanying Memorandum.

**IT IS FURTHER ORDERED** that all Defendants shall submit to an arbitration before the National Association of Securities Dealers (NASD).

**IT IS FURTHER ORDERED** that this case is **STAYED** pending the outcome of the NASD arbitration.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file a surresponse (doc. no. 47) is **GRANTED**

**IT IS FURTHER ORDERED** that Defendants' motion for leave to file a surreply (doc. no. 48) is **GRANTED.**

**AND IT IS SO ORDERED.**

---

27. The Court takes notice of Plaintiffs' reluctance to submit their dispute to NASD arbitration. After all, Plaintiffs allege that MONY scapegoated them to appease NASD regulators. Presumably, in light of the nature of the dispute, Plaintiffs do not think that an NASD arbitrator (whomever he or she may be) will provide them a fair hearing. Nevertheless, it is not the Court's role, at this stage, to determine whether an arbitrator will be fair. Under the FAA, if Plaintiffs (or Defendants, for that matter) are unsatisfied with the outcome or procedures of the arbitration, and if appropriate, the proper remedy is to raise the issue with the Court *after* the arbitration has taken place. *See* 9 U.S.C. § 10(a).